The People v. Fred J. Wallin, impleaded with David Isdell.

55 497.
56 547|

*Robbery—Evidence—Theory of case—Credibility—Charge.*

1. A person who had been throwing dice with two or three others was shortly after robbed by two of them, and on the prosecution for the robbery the identity of one of the offenders was the main question. *Held,* that a policeman who had seen the group throwing dice, and had testified that he thought one of them was the respondent, might properly be asked if there was then any doubt in his mind that the man he had seen was respondent.

2. In a case of robbery where there was a question of identity as between two persons, it was proper for a witness to testify that on the day after it was committed the victim had pointed out to him the respondent, and had told him, though not in respondent's presence, that he was one of the persons who robbed him; such a statement is not evidence of respondent's guilt, but it shows that the victim's belief in respondent's identity was continuous.

3. Where a person accused of a crime committed on his own premises takes the witness stand, it is proper to examine into his conduct in connection with the accusation, and ask him whether he helped the officers investigate.

4. Neither judge nor jury is strictly confined to the theory of either the prosecution or the defense in a criminal case if other theories are consistent with the facts. And a casual suggestion in the charge, involving a different theory and implying the possible guilt of some other person is not clearly prejudicial to respondent, and ought not to be made the subject of an exception unless objection is made to it at once so that the judge can correct it if he sees fit.

5. The credibility of a witness who has turned State's evidence is for the jury like that of any other witness and they cannot be instructed that it is worthless.

6. Instructions respecting the credibility of a witness are not matter of right if they involve no question of law. And it is not necessarily an abuse of discretion to direct attention, in the case of one witness, to facts that would detract from his credibility, and not to do so in the case of another.

7. A judge is not obliged, in charging a jury, to comment on facts at all; but may, if he chooses, confine himself strictly to laying down such rules of law as must guide their action.

Exceptions before judgment from Saginaw. (Gage, J.)
November 19.—January 7.

ROBBERY.  Conviction affirmed.

Attorney General *Van Riper* for the People.

*Camp & Brooks* and *Wisner & Draper* for respondent.
Refusing to charge as requested and suggesting some other
theory than those relied on is error: *Hewitt v. Begole* 22
Mich. 31; *Lacy v. Wilson* 24 Mich. 479; *Strang v. People*
id. 12; *People v. Jones* id. 228; *Josselyn v. Bishop* 25 Mich.
397; *Chadwick v. Butler* 28 Mich. 349; *Moynahan v. Con-
nor* 30 Mich. 136; *Sullivan v. People* 31 Mich. 4; *Brown
v. People* 36 Mich. 203; *Scripps v. Reilly* 38 Mich. 10.

COOLEY, C. J.  Wallin and .Isdell were informed against
for the robbery of one Rutan of a sum of money.  The rob-
bery was alleged to have taken place in the saloon of defend-
ant Wallin in East Saginaw, late in the evening of November
1, 1883.  Isdell pleaded guilty to the information, and
Wallin was tried separately.

Rutan, it appears, accompanied by one Burras, had gone
to East Saginaw on the day of the robbery to transact
business at the United States Land-office.  After concluding
the business the two had a lunch at a restaurant, and Rutan
drank beer more than .once in the course of the afternoon.
At six o'clock Burras took the cars of the Detroit & Bay
City Railroad Company for home.  Rutan remained, intend-
ing to take the train of the Jackson, Lansing & Saginaw
Railroad going north on the west side of the river at nine
o'clock the same evening.  He crossed the river to take
that train, but was late in reaching the station, and the train
was gone.  He recrossed the river to East Saginaw, and
entered Wallin's saloon.  Rutan's evidence is that he entered
no other saloon previous to entering Wallin's after his re-
turn from the west side of the river; but the defense put in
testimony. that he drank beer at Wallin's early in the even-
ing, and also that he was in a place kept by one Stabback,
where he both drank and played cards until he left to take

the cars. It is agreed on all sides, however, that Rutan was in Wallin's after nine o'clock on his return from the station.

Rutan testifies that when he found he was late for the cars he went into Wallin's to inquire for some place to pass the night. He found Isdell behind the bar, and asked him about lodgings. Isdell told him they did not keep lodgers, but he would show him where he could find lodgings. Isdell proposed that they should throw dice for the drinks before going, to which Rutan assented. Another man was standing there who, Rutan was satisfied, was Wallin. Isdell introduced Rutan to him as a lumberman, and they shook hands together, and then the three threw dice together. After the game was finished, they all drank. Rutan then turned around and put his left hand upon the screens standing near, when Wallin caught hold of his arm and said "You are not going to get away in this way," or something to that effect. Rutan made excuse that he wanted to go to the water closet at the other end of the room, and started to go there. Just as he reached the water closet Wallin caught hold of both his arms near the elbow, while Isdell threw his hand around his neck, put one hand over his mouth, took his pocket-book from his pocket with the other, took out the money and then put back the pocket-book. Wallin was holding him all the time. After all this occurred they let him go from the saloon. He was greatly in fear, and ran off as fast as he could until he met policemen, to whom he told the story. Rutan, while he and the others were shaking dice in the saloon, noticed another man come in, but the two who shook dice with him were the men who robbed him.

The defense did not contest the fact of the robbery, nor of Isdell's connection with it; but their theory of the case was that the other guilty party was one Howard. The question of fact on the trial, therefore, resolved itself into a question of identity; the prosecution contending that Wallin was the associate of Isdell in the robbery, while the defense insisted it was Howard. Rutan's evidence fixing the crime upon Wallin, was corroborated by one Tilloch, a policeman, who testified to seeing Isdell, Rutan and another, who he

believed to be Wallin, throwing dice together, and also by Isdell, who swore positively that Wallin was the person who held Rutan while the witness robbed him. On the other hand Wallin testified that he had been lying down and asleep in a back dining-room until near eleven o'clock, which was after the hour of the robbery, when he got up and went into the saloon. Isdell and Howard were there, but both soon went out. Rutan afterwards came into the saloon with a policeman, and said it was there he had been robbed. This testimony as to his whereabouts the forepart of the evening was corroborated by other witnesses.

The defense also produced evidence that Howard was in Wallin's saloon in the evening, throwing dice with Isdell and Rutan. The next morning Isdell and Wallin were arrested, and Wallin then went to see Howard. He did not find him, but left word for Howard to come and see him, which he did. Wallin says he told Howard, Rutan claimed to have been robbed in the saloon. Howard said he wasn't robbed that he knew anything about; that he shook dice with him for money, but did not say for how much. Wallin said "He claims he was robbed, and takes me for you." Howard responded, "What am I going to do about it?" Wallin said, "We are arrested, and you know I never shook dice that night." Howard then said, "What are you going to do about it?" And Wallin responded, "You know your own business: you know you were standing at the bar, and both went out as soon as I came in." Howard said, "What would you do?" And Wallin replied, "I don't know anything about what you did, or anything about it, and I don't propose to know." The next he heard Howard was gone, and he was unable to find him.

Howard's story was that he only stepped into Wallin's for a moment after half past ten in the evening; that Wallin was counting over some money and Isdell stood by him; that he got a drink of Isdell and then left; that subsequently he went to see Wallin in response to a request sent him, and Wallin took out thirty dollars and gave him, told him to keep mum and that he had better go

away for awhile, which he promised to do. That afternoon or evening he saw Wallin again, who inquired if he was not gone yet, and said he might as well go then as any time if he was going; and Howard did then go, first to Alpena and then to Cheboygan, where he was arrested and brought back.

When the witness Tilloch was on the stand he was asked the question : " Is there any doubt existing in your mind that the man you saw standing at the right-hand side of Rutan at the time when you looked through was this defendant Wallin ? " The question was objected to as incompetent. It sought to bring out, it is said, not what the witness saw at the time and the impression then made, but the conclusion to which he had subsequently arrived. This conclusion might depend much upon the character of the witness: with one person an impression might strengthen until it became a certainty in the mind ; with another, reflection might remove it. But while this may be true, we think the question unobjectionable. The witness had testified that he thought the man he saw was Wallin. If he, when testifying, had any doubts of the identity, it was proper to ascertain the fact; if he had none, the grounds of his belief might be inquired into. The jury were entitled to know what the witness knew respecting the identity, and how positive his knowledge was : if he was speaking doubtfully they should know it, and if with confidence, it was proper they should know the grounds of his confidence.

Tilloch was also permitted to testify that Rutan, the next day, pointed out Wallin to him and said he was one of the parties who robbed him ; the remark not being made in Wallin's presence. This is assigned for error. But the fact that Wallin was not within hearing is of no importance. The statement was no evidence of Wallin's guilt; it was only a circumstance attending the search for the guilty parties and the arrest, and was of no importance except as it showed that Rutan's belief that Wallin and not Howard was the man concerned had been continuous.

Wallin, when testifying on his own behalf, testified to the officers' coming in and arresting Isdell the next morn-

ing, and was then asked whether he assisted the officers in any way in investigating the robbery. This was objected to, but the objection was overruled, and he replied: "No, sir; I just told them that Dave [Isdell] and Curley [Howard] went out together; they were in there when I went in. I could not tell them anything I did not know." Complaint is made of this question, but we think without reason. The crime had been committed in defendant's place of business, and his servant had been concerned. There was strong evidence connecting him personally with the crime; and when he took the witness stand in exculpation, it was proper to permit the prosecution to inquire what his conduct in connection with the accusation had been, that it might be seen how far it was consistent with the innocence he was testifying to.

Some other errors are assigned upon the admission of testimony for which no reasons are assigned in the brief for the defense, and as error is not apparent, we pass them without further remark.

When the case was about to be submitted to the jury, the defense requested the judge to charge them as follows: " It is the theory both of the prosecution and the defense that two persons, and two persons only, were concerned in the alleged robbery; and it is conceded that one of these persons is David Isdell. It is claimed by the prosecution that the other person is the prisoner, and by the defense that the other person is William Howard, one of the People's witnesses. In arriving at a verdict you are not to consider any other theory than this one of the prosecution and defense; and if from the testimony you have a reasonable doubt as to whether or not the defendant Wallin or the witness Howard, or any other person, assisted Isdell in committing this robbery, you must give defendant Wallin the benefit of that doubt and acquit him." The judge did not give this instruction in terms; but after saying that Isdell confessedly was one of the guilty parties, he added: " The question in this case is, who is the other man. That is the question for you to decide. If you are satisfied from the testimony in this case beyond a

reasonable doubt that Wallin was the other party, you ought to find him guilty. If you are not so satisfied, you ought to acquit him. As I said before, the other party who is guilty is the party who held his arms. That is the man you are looking for. And in considering the testimony, I invite you to consider it with that end in view; to ascertain who that man was who held his arms there near the water closet. Not any other man that he may have had something to do with, or that he may have shaken dice with. But the man that held his arms when he was near the water closet is the party you want to find, and ascertain who he is."

The complaint made of this instruction is that it suggested the presence and participation of some third person, when there was nothing in the record tending to show it, and all the evidence showed that the person who threw dice with Rutan was the person who assisted in robbing him. This, it is said, may have misled the jury. And later, in response to an inquiry by the jury, the judge said : "If you should find from the testimony in this case that defendant Wallin was in the saloon at the time Rutan was there, and that he took hold of Rutan's arms as he was about to leave, with a design to detain him in the saloon, and also with a design and intent that he should then and there be robbed of his money, and should also find that he was robbed of his money at that time, although Wallin may not have been the man who held him or abstracted the money, he would by the act of detention for that purpose, in that design, be an aider and abettor in the offense, and would be liable as principal."

Here again is a suggestion that some third party may have participated in the robbery, and that Wallin may have performed the first act in detention,-and the third party been assistant later. Neither the prosecution nor the defense claimed that this was the fact. But neither the judge nor the jury were tied down closely to the theories respectively advanced : the facts were laid before them as the parties claimed they were, and they were at liberty to draw their own conclusions even though they might have differed from both theories. The prosecution said Isdell and Wallin were

the guilty parties; the defense said they were Isdell and Howard; but with evidence so much confused as this was, and given by parties who at the time were drinking freely, it would not have been surprising if the jury had believed that neither of the theories advanced was altogether correct, or altogether false. A fourth party, it was conceded, was in the saloon at one time while Rutan was there; and the request for instructions made by the defense seems to concede the possibility that the jury might have doubts whether this fourth party was not the assistant in the robbery.

But whether the evidence did or did not warrant such a suggestion, we do not think a casual remark like that made by the judge could be made the subject of legal exception. In the first place, it is difficult to understand how it could be damaging to the defense, to suggest that possibly some other person might have been concerned in the robbery. It would seem, on the other hand, to be probably favorable. But if the defense thought otherwise, and considered the remark unwarranted, they should have called attention to it at the time, and given the judge an opportunity for correction. If when the judge comments on the facts, as the parties called upon him to do in this case, every word and every sentence may be the subject of a general objection, and must be justified on error when for the first time the reasons for the exception are given, no verdict, in a closely-contested trial as this was, would be likely to stand. This is not the way to deal with a charge; it should be assumed that the judge intends accuracy, and if carelessly he is inaccurate, he should at once be given opportunity for correction.

The defense also asked the judge to instruct the jury that as Isdell admitted his own guilt, and as it appeared from his evidence that he expected favor when he came to be sentenced, because of giving his evidence, they must consider him a person unworthy of credit, and should give little, if any, credit to his testimony, and would not be justified in convicting the defendant upon it. Also, that "in considering his testimony they must bear in mind its worthless and unreliable character, and would not be authorized in considering it

as corroborating other testimony." The judge declined to give such instructions, but told the jury all questions of credibility of testimony were for them.

It is not the right of any party to demand such instructions as were here proposed. There is no such rule of law as the requests assume. The force of a witness' testimony depends upon the credit the jury think it entitled to; and no court has a right to lay down for a jury rules whereby they shall determine the force of evidence, irrespective of the credence they actually give it in their minds. *People v. Jenness* 5 Mich. 305; *People v. Schweitzer* 23 Mich. 301. The facts which manifestly detract from the credit are before the jury, and it is supposed they will duly weigh them; and specific directions that they must or must not believe a witness are an invasion of their province. The judge was right in declining them in this case, and he was right in saying to the jury, as he did in substance, that when the law permits persons to testify as witnesses, it assumes that they may tell the truth, and whether they have done so in the case is for the jury to say under all the circumstances appearing before them.

The defense also requested the judge to point out to the jury the circumstances tending to discredit the witness Howard; and this was refused. We repeat that instructions respecting the credibility of witnesses, which involve no question of law, are not matter of right. The judge is under no obligation to comment upon the facts; he may, if he chooses, confine himself strictly to laying down such rules of law as must guide the action of the jury, and leave the facts to them without a word of comment. In many cases this is no doubt the desirable course. And it is always within the discretion of the judge to adopt it.

Criticism is made of the judge's instructions on the presumption of innocence to which the defendant was entitled; but we think it not well founded. The charge on that subject was full, and as we think, fair and accurate. It is also complained that in calling attention to the evidence of the defendant on his own behalf, the facts that would tend to

detract from his credibility were pointed out, though it was not done in the case of the witnesses Isdell and Howard. Here, again, the fault found concerns the exercise of the judge's discretion.   What the judge said was correct, and the fault found with him is that he did not go farther and extend his comments to the testimony of other witnesses. But no abuse of discretion appears in the case, and therefore nothing which will support an exception.   The defendant, so far as we can judge by the record, has had a fair trial, and we discover nothing indicating a purpose on the part of the judge that he should be dealt with otherwise than fairly and justly.

No legal error appearing, the conviction must be affirmed.

The other Justices concurred.