PEOPLE *v.* DUMAS.

1. CRIMINAL LAW — EVIDENCE — CREDIBILITY OF ACCOMPLICE — WITNESSES.

The credibility of an accomplice is exclusively for the jury.

2. SAME—TRIAL—INSTRUCTIONS TO JURY.

While it is not improper to instruct the jury in regard to the credibility of testimony given by an alleged accomplice in the crime, error may not be predicated on a failure of the trial judge to comment thereon, if no special request is proffered by respondent.

3. SAME—ROBBERY—STATUTES.

In a prosecution for assault and robbery by respondents while armed with a dangerous weapon, with intent to kill or maim if resisted, proof that a knife was stolen from the person robbed, although no evidence of its value is offered except the production of the knife itself, sufficiently establishes the fact that it was property subject to larceny and of some value. 3 Comp. Laws, § 11484.

4. SAME—EVIDENCE—WITNESSES—IMPEACHMENT.

An accomplice having testified to the commission of a crime by respondents, and having admitted on cross-examination that he had stated to an officer in respondents' presence that he had lied in first charging them with the crime, the court properly refused to strike out his explanation that he withdrew the charge because he was afraid they would do away with him.

5. SAME—CHARGE—CREDIBILITY OF WITNESSES.

The trial court may call the attention of the jury to such interest as the respondents who took the stand in their own behalf would have in giving their testimony, and may inform the jury concerning the weight which they may attach to their admitted criminal record, and the charge is not objectionable in failing to refer to the criminal record of the accomplice where the court referred to no particular testimony, but used general language applicable to all the witnesses.

6. SAME—INDETERMINATE SENTENCE.

A sentence to imprisonment for life is sufficient without fixing a minimum term under the indeterminate sentence law. Act No. 184, Pub. Acts 1905. *People* v. *Vitali*, 156 Mich. 370.

7. Same—Assault and Robbery with Weapon—Sentence—Ex-
    cessiveness.

  The imposition of life imprisonment is justified for entering a
    store under false pretenses after closing hours, striking the
    proprietor's wife with a revolver and searching the person
    of the proprietor to commit robbery, although only a jack-
    knife was stolen.

Error to the recorder's court of Detroit; Connolly, J.
Submitted February 11, 1910. (Docket No. 161.) De-
cided April 1, 1910.

Fred Dumas and Xavier Kryzer were convicted of the
statutory crime of robbery and assault while armed with
a dangerous weapon, with intent to kill or maim if resisted,
and sentenced to imprisonment for life in the branch of
the State prison at Marquette.   Affirmed.

*Trevor & Bumps*, for appellants.

*Philip T. Van Zile*, Prosecuting Attorney, and *Fred
H. Aldrich*, Assistant Prosecuting Attorney, for the
people.

Ostrander, J.  Respondents were informed against
for the crime defined in 3 Comp. Laws, § 11484, were con-
victed and sentenced to prison for life.  The exceptions
relied upon will be noticed in the order of their presenta-
tion in the brief for respondents.

1. The testimony for the people tended to prove that
three men, two of whom were armed with and displayed
revolvers, entered the place of business of one Charles
Tyler, in the city of Detroit, and, acting in concert,
assaulted Mr. Tyler and his wife, and in a search con-
ducted by one of them found and took from the person of
Tyler, and carried away, his pocket knife.   Respondents
deny being present upon this occasion.   Frank Rankow-
sky, a young man then on his parole from Jackson prison
and at the time of the trial an inmate of the prison, ad-
mitting that he was one of the said three men, was a wit-
ness for the people.   He was not informed against with

the respondents. He has a somewhat startling criminal record for one of his years. It is complained that the recorder, in instructing the jury, did not, as fully as the circumstances of the case demanded, comment upon the testimony of this witness. And it is said that he did comment, unfavorably to the respondents, upon the credibility which should be given to their testimony, they having, each of them, admitted a criminal record. It does not appear that any requests to charge were preferred. What was said to the jury upon the subject was the following:

"In that connection let me say that the defendants have taken the stand in their own behalf, as it was their legal right to do. You, as sole, exclusive judges of the credibility of the witnesses, may, if you want to, believe them; but I feel it is my duty to say to you that, because they are the defendants, they are under strong inducement to tell that story which will most redound to their advantage.

"Now, in determining what amount of credence you are to give to the story of any particular witness, you should, as reasonable men, consider the reasonableness of the story told, and you should, as far as their antecedents appear in evidence, consider their antecedents as bearing upon their credibility. It goes without saying, that you are to consider the fact that a man has hitherto been convicted of a crime, and has served time for the commission of crime, as bearing upon his credibility; as bearing upon the amount of credence you want to give to his statements under oath."

No reference was made in the charge to the position of the witness Rankowsky as an accomplice in the commission of crime. It does not appear that Rankowsky had been promised or that he expected immunity. He had been returned to Jackson prison to serve out an unexpired sentence. He admitted having given to the officers the information that respondents participated in the commission of the crime, stating as well that he had nothing to do with it, admitted having had trouble with one of the respondents about a week after the rob-

bery was committed. He also admitted that when the
officers confronted him with respondents he in their pres-
ence denied their participation. Identity of respondents
and the men who committed the assault did not depend
solely upon the testimony of Rankowsky.

It is the long settled rule in this State that the credibil-
ity of an accomplice, like that of any other witness, is a
question exclusively for the jury. And while there have
been intimations, rather than rulings, to the effect that it
is proper, or is not improper, especially in cases where an
accomplice is the sole witness upon a material point, for
the trial court to direct the attention of the jury to the
circumstance and invite the exercise of caution upon the
part of the jury, we know of no decision of this court in
which it is held or intimated that the failure of the court
to indulge in voluntary comment is ground for reversal.
The difficulties which are liable to attend upon comments
upon testimony are illustrated in *People* v. *Murray*, 72
Mich. 10 (40 N. W. 29), and in *People* v. *Clarke*, 105
Mich. 169 (62 N. W. 1117). It is true that in *People* v.
*Jenness*, 5 Mich. 305, 330, it is spoken of as a duty of the
court. The question was not involved, and the language
was employed to indicate the limit of comment rather
than to state a duty. In *People* v. *Hubbard*, 92 Mich.
322, 325 (52 N. W. 729), reference is made to *People* v.
*Jenness* in ruling that a specific request should have been
given. The general subject was discussed in the opinion
in *People* v. *Wallin*, 55 Mich. 497, 505 (22 N. W. 15),
in connection with a general request made by the defense
to the trial judge that he point out to the jury the circum-
stances tending to discredit a witness which the court
refused to do. It was said:

"We repeat that instructions respecting the credibility
of witnesses, which involve no question of law, are not
matter of right. The judge is under no obligation to com-
ment upon the facts; he may, if he chooses, confine him-
self strictly to laying down such rules of law as must
guide the action of the jury, and leave the facts to them

without a word of comment. In many cases this is no doubt the desirable course. And it is always within the discretion of the judge to adopt it."

This contention of respondents is overruled.

2. No testimony was given upon the value of the knife which was taken. It is alleged to be of the value of 25 cents. It was produced at the trial. The jury were instructed that they must be satisfied, beyond a reasonable doubt, that property of some value was taken from the person of Mr. Tyler. The language of the statute is "any money or other property, which may be the subject of larceny." It cannot be said there was no evidence that the knife was property, the subject of larceny, and of some value.

3. The witness Rankowsky, having admitted upon cross-examination that, upon being confronted with respondents and asked by the officer to repeat in their presence the story he had before that time told the officer, had said that he (witness) had lied. On redirect examination he stated that he made this statement because he was afraid that respondents would do away with him. The court refused to strike out this explanatory answer, and the exception taken to the ruling is relied upon. The ruling was proper. The witness had informed the officers that the respondents were two of the guilty persons. They had been taken into custody. He had testified that they, with himself, were the guilty persons. It was, of course, proper for the defense to prove by his admission or otherwise that he had told different stories and had denied the truth of the facts he had testified to at the trial. But whether he had really retracted his first statement to the officers or was merely placed, upon the occasion in question, in a situation where he was afraid to repeat it, was matter of some consequence. Respondents were not entitled to have his retraction appear to be what in fact it was not.

4. This contention is based in part upon the alleged dis-

crimination made by the court, in the portion of the charge heretofore set out, in the reference to the inducements likely to affect respondents, and in not characterizing the witness Rankowsky. It was not improper to call attention to the interest which respondents had in the result of the trial. And in the next paragraph he clearly invites the attention of the jury, without discrimination, to the antecedents of all witnesses as they have been made to appear. He refers to no particular testimony. The charge is not open to the criticism that it exploits one of the alleged robbers to the disadvantage of the others.

5. It is urged, lastly, that the sentence imposed was unwarranted, both because no minimum term was fixed, and because, in any event, a sentence for life is excessive and an abuse of discretion reposed in the trial court. As to the legality of the sentence, the point is controlled by *People* v. *Vitali*, 156 Mich. 370 (120 N. W. 1003). If we were to consider only that the respondents stole a jackknife, the conclusion that the sentence was so excessive as to be shocking would be irresistible. But the larceny is only one and that the least important element, in fact, in the crime charged. To obtain entrance to a store, occupied with a dwelling, at night, after the store is closed, upon a false pretense, to threaten the family with revolvers, to strike the wife of the proprietor with a revolver to silence her, to search, for the purpose of robbery, the person of the proprietor—these are the facts which the testimony tended to establish with a clearness which warranted the inference that there was an intention, if resisted, to kill or maim the person robbed. Considering all of the circumstances, it does not appear that the imposition of the maximum sentence permitted by the statute is unwise, much less does it appear shocking.

There is no error, and the judgment is affirmed.

McAlvay, Brooke, Blair, and Stone, JJ., concurred.