PEOPLE *v.* IVERSON

PEOPLE *v.* LARSON

1. SEARCHES AND SEIZURES—AUTOMOBILES—TRAFFIC VIOLATION—RIGHT TO SEARCH.

Police officers' justifiably stopping an automobile for a traffic violation does not in itself grant the police officers the right to search the interior of the automobile and its trunk.

2. SEARCHES AND SEIZURES—INCIDENT TO ARREST—POSSESSION OF HUNTING KNIFE.

Having a hunting knife in a sheath in an automobile's glove compartment does not constitute a crime; a search of defendants' automobile and defendants' arrest were not justified where the only basis was a police officer's seeing a sheathed knife in the glove compartment of defendants' car.

3. SEARCHES AND SEIZURES—AUTOMOBILES—PROBABLE CAUSE.

Search of defendants' automobile was not based on probable cause independent of an invalid arrest where the search was

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 47 Am Jur, Searches and Seizures § 18.
[3] Lawfulness of search of motor vehicle following arrest for traffic violation. 10 ALR3d 314.
[2] 56 Am Jur, Weapons and Firearms § 3 *et seq.*
Arrest, or search and seizure, without warrant on suspicion or information as to unlawful possession of weapons. 92 ALR 490.

based on information from Minnesota police that one of the defendants had been questioned in Minnesota regarding criminal offenses in that state and that he had had a newspaper clipping relating to a 1969 breaking and entering in the Michigan county in which he was arrested, the defendants had been speeding and had slowed down or stopped on the wrong side of the road, and a police officer had seen a sheathed hunting knife in the car's glove compartment.

Appeal from Ontonagon, Donald L. Munro, J. Submitted Division 3 May 13, 1971, at Grand Rapids (Docket Nos. 10368, 10369, 10370, 10371.) Decided June 24, 1971.

Richard E. Iverson and Charles V. Larson were charged with possession of burglary tools, breaking and entering, and attempted safe breaking with intent to commit larceny. Motion to suppress evidence denied. Defendants appeal by leave granted. Reversed and remanded with instructions.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Allen R. Briggs,* Prosecuting Attorney, for the people.

*Messner, LaBine & Vairo* (by *David R. Mechlin*), for defendants.

Before: FITZGERALD, P. J., and HOLBROOK and LEVIN, JJ.

HOLBROOK, J. This appeal affects four cases consolidated by consent of the parties and based on the same fundamental facts. Defendants Richard E. Iverson and Charles V. Larson appeal by leave granted by this Court from an August 28, 1970 order of the Ontonagon Circuit Court, which denied defendants' motions to suppress evidence.

Defendants in these cases are charged with the following crimes: (1) possession of burglary tools (MCLA § 750.116 [Stat Ann 1962 Rev § 28.311]); (2) breaking and entering (MCLA 1971 Cum Supp § 750.110 [Stat Ann 1971 Cum Supp § 28.305]); and (3) attempted safe breaking with intent to commit larceny (MCLA § 750.531 [Stat Ann 1954 Rev § 28.799]).

On May 5, 1970, the law enforcement authorities in Ontonagon County were alerted by authorities in Minnesota that Iverson might be in the Ontonagon area. The sheriff's and prosecutor's concern about Iverson first arose from information received November 20, 1969, from St. Paul, Minnesota authorities informing them that Iverson had been questioned with respect to an offense in Minnesota and that he had, at the time, in his possession, a newspaper clipping relating to a breaking and entering earlier that year in Ontonagon. The sheriff later received information from Minnesota authorities that Iverson had been involved in quite a few breakings and enterings.

The sheriff informed his staff and other authorities on May 5, 1970, to be on the lookout for Iverson and keep him under surveillance. On the early morning of May 6, 1970, a sheriff's deputy spotted Iverson's car and followed it. He observed the car speeding up to 95 miles per hour and almost stopping or stopping on the wrong side of the road on one occasion. Later on that morning, at about 5 a.m., two state police officers joined up with the deputy and after discussing with him what he had observed, continued the surveillance. At that time, the deputy intended to return to his station. Upon receiving word over the radio that the state police were going to stop the Iverson vehicle, the deputy

proceeded to join the officers and arrived at the scene just as the Iverson vehicle was stopped. The state police asked Iverson and his companion Larson what they were doing in the area. Larson explained they had come to the Ontonagon area to spend a three-day vacation. The police asked Larson, who was the driver of the car, to produce his driver's license and registration. Larson gave one of the officers his license and opened the glove compartment to obtain the lease papers because the car was a rented vehicle. The license and papers appeared to be in proper order. When the glove compartment was opened, one of the officers observed a hunting knife. Upon seeing the hunting knife, the officer requested the two men to step out of the vehicle. The officer testified at the preliminary examination that he didn't consider the presence of the hunting knife to be extremely unusual, nor did he believe it was a violation of Michigan law to have a hunting knife in a sheath in a motor vehicle unless it was intended to be used against some person, in which event he did not know whether it would be a misdemeanor or a felony. He further testified that there was nothing suspicious about what was in the car itself, other than the presence of the hunting knife. The only other suspicions they had were based on the information from the Minnesota authorities that "This group of persons was supposed to be armed at the time". The officer acknowledged that a hunting knife is not in itself illegal. The officers further testified that they did not arrest Iverson and Larson, nor did they intend to arrest the defendants at that time. At this point, one of the officers testified that Larson consented to a search of the car. Defendants contested this claim by affidavits filed with their motions to suppress.

The officers searched the trunk and the interior of the car and found articles which were subsequently proved to have been taken from a high school at Ewen together with various alleged burglary tools. The defendants were then arrested and taken to the Ontonagon County jail. Thereafter, close to noon that same day, the police learned that the Ewen-Trout Creek school had been burglarized.

The following day, the defendants were charged with the offenses hereinbefore stated.

The motions to suppress the evidence in circuit court were made on the ground that the search of the automobile was in violation of the defendants' rights under the Fourth Amendment of the United States Constitution. After briefs and argument, but without an evidentiary hearing, the trial court ruled that the search was lawful based on probable cause.

The people claimed at the hearing on the motion to suppress that the search was lawful because it was (1) reasonable and (2) that a voluntary consent had been given to conduct the search.

The defendants raise two issues on appeal which we combine and restate as follows:

Was the search of defendants' automobile justified because either (1) it was incident to a lawful arrest or (2) the police officers had sufficient independent probable cause to search defendants' vehicle?

## I

The defendants assert that the evidence presented at the preliminary examination is not adequate to justify the trial court's finding that the search was incident to a lawful arrest.

The fact that the police were justified in stopping the vehicle for a traffic violation, that of speeding, did not in and of itself grant to the officers the right

to search the interior of the automobile and its trunk. *People* v. *Gonzales* (1959), 356 Mich 247, and *People* v. *Marshall* (1970), 25 Mich App 376.

The fact that the officers saw a hunting knife in a sheath in the glove compartment of the car was not sufficient grounds for the arrest of the defendants for committing a felony. Possession of a hunting knife is not against the law except when the person is armed with such a knife "with intent to use the same unlawfully against the person of another". MCLA § 750.226 (Stat Ann 1962 Rev § 28.423). Hunting knives "adapted and carried as such" are excepted from the statute forbidding the carrying of concealed weapons. MCLA § 750.227 (Stat Ann 1962 Rev § 28.424). The presence of the hunting knife in the automobile was not a violation of law and one of the officers testified that he knew it was not illegal and that he did not consider its presence in the glove compartment to be "extremely unusual". We conclude that a search of defendant's automobile under the facts in this case was not justified as being incidental to the claimed lawful arrest of the defendants for a violation of the traffic law or the carrying of a concealed weapon.

## II

The defendants claim that the officers at the time of the search of the automobile did not have sufficient independent probable cause to justify the search. The information from the Minnesota authorities that defendant Iverson had been questioned in reference to some offenses committed in that state, that he had in his possession a clipping relating to a breaking and entering early in 1969 in Ontonagon and the fact that the police later learned that Iverson had been involved in breakings and

enterings in Minnesota did not furnish sufficient probable cause to believe that defendants committed or were committing a felony at the time that they were observed by the sheriff's deputy and stopped by the state police in the early morning hours of May 6, 1970.

At the time of the search there had been no lawful arrest of the defendants for any felony. At that time the officers did not have any knowledge of any breakings and enterings in the Ontonagon area. The defendants were not suspected of having in their automobile the fruits of any crime or any contraband. The evidence, viewed in the best light for the people, indicates nothing more than that two individuals with highly questionable reputations should be kept under observation, that they had been speeding in the automobile and on one occasion slowed down or stopped on the wrong side of the road, that upon their being stopped for speeding the officers observed a hunting knife in a sheath in the glove compartment of the car. These facts and circumstances were insufficient to justify a finding of probable cause to support the search.

"The use of the automobile as an instrumentality in the commission of criminal offenses, has not changed the settled law as to search without a warrant. While the sacred attributes of a home have not been authoritatively ascribed to an automobile, before an officer is justified in stopping and seizing an automobile or its contents without a search warrant, he must have probable cause to believe that a felony has been or is being committed." 2 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 875, p 1151.

It is true that the police officers may have had suspicions concerning the activities of the defendants while in the Ontonagon area; however, no mat-

ter how suspect defendants were nor how suspicious their activities, their actions under the circumstances did not rise to rise to probable cause to believe that a felony had been committed or was being committed, which alone justifies the search of an automobile without a warrant. *People* v. *Kuntze* (1963), 371 Mich 419; *People* v. *Zeigler* (1960), 358 Mich 355; and *People* v. *Miller* (1928), 245 Mich 115. The refusal to suppress the evidence on this ground was erroneous.

The trial court did not rule on the remaining issue raised by the people, *i.e.*, that the search and seizure were justified upon the premise that they were the results of a voluntary consent given by the defendants. Absent a ruling on the issue in the trial court, we are unable to review the matter. This issue is still alive and upon remand may be considered. If it is the subject of determination in the trial court, further testimony may be taken upon motion by either party. See, *People* v. *Kaigler* (1962), 368 Mich 281; *People* v. *Shaw* (1970), 383 Mich 69; and *People* v. *Waskowski* (1970), 23 Mich App 60.

Reversed and remanded for further proceedings not inconsistent with this opinion.

All concurred.