PEOPLE v POTTS

1. INDICTMENT AND INFORMATION—AMENDMENT—DISCRETION.

The trial court has broad discretion to permit amendments to the information at any time, even after the trial has commenced, and therefore it was proper to allow an amendment of the information to list the true corporate name of the victim where defendant was in no way surprised or prejudiced by the amendment (MCLA 767.76).

2. INDICTMENT AND INFORMATION—AMENDMENT—CONSPIRACY.

A defendant was not prejudiced by an amendment to the information changing the crime charged from common-law to statutory conspiracy because both charges require the same proof and an amendment calling for the same defense as would the original charge cannot be considered surprising or misleading where the defendant is sufficiently apprised of the nature of the offense, nor can defendant claim prejudice in a disparity of the maximum sentences prescribed when he was given the benefit of the maximum sentence as provided by the statute dealing with indictable common-law offenses (MCLA 750.157a, 750.505).

3. APPEAL AND ERROR—VERDICTS—EVIDENCE.

A jury determination based on valid evidence presented before it is final; the Court of Appeals will not review cases anew solely on the evidence.

4. ARREST—PROBABLE CAUSE—ELEMENTS.

Probable cause exists to stop, search, and ultimately arrest the accused where the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy

REFERENCES FOR POINTS IN HEADNOTES
[1] 41 Am Jur 2d, Indictments and Informations §§ 201, 204.
[2] 41 Am Jur 2d, Indictments and Informations § 183.
  Power of court to make or permit amendment of indictment. 17 ALR3d 1181.
[3] 5 Am Jur 2d, Appeal and Error § 880 *et seq.*
[4] 5 Am Jur 2d, Arrest §§ 24, 32.
[5] 47 Am Jur, Searches and Seizures § 54.
[6] 30 Am Jur 2d, Evidence §§ 1148, 1151.

information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.

5. SEARCHES AND SEIZURES—PLAIN VIEW—EVIDENCE.

Objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.

6. CRIMINAL LAW—CONSPIRACY—ACCOMPLICE—CREDIBILITY—QUESTION FOR JURY.

A defendant was not prejudiced by an alleged co-conspirator's testimony concerning facts vital to the conviction of defendant; the credibility of an accomplice, like that of any other witness, is exclusively a question for the jury, and it is well settled that a jury may convict on such testimony alone.

Appeal from Kent, Roman J. Snow, J. Submitted Division 3 January 3, 1973, at Grand Rapids. (Docket No. 12155.) Decided February 21, 1973. Leave to appeal denied, 389 Mich 801.

Norah Potts, Jr., was convicted of conspiracy to utter and publish forged checks. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, *Donald A. Johnston, III,* Chief Appellate Attorney, and *Robert A. Marsac,* Assistant Appellate Attorney, for the people.

*Gordon A. Doherty,* for defendant on appeal.

Before: HOLBROOK, P. J., and FITZGERALD and VAN VALKENBURG,* JJ.

FITZGERALD, J. Defendant, Norah Potts, Jr., together with his wife, Patsy Potts, and James Roy Smith, was originally charged with common-law

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

conspiracy[1] to utter and publish forged checks[2] in accord with an information filed in Kent County on September 24, 1970. On February 1, 1971, Smith pleaded guilty to count 2 of an amended information charging him with attempt to utter and publish a forged check. Norah and Patsy Potts were tried by a jury on April 20, 21, 1971. By amendment, defendant was charged with the statutory crime of conspiracy pursuant to MCLA 750.157a; MSA 28.354(1)[3] rather than the common-law provision under MCLA 750.505; MSA 28.773. Potts was found guilty of conspiracy to utter and publish forged checks, and was sentenced to a prison term of 2-1/2 to 5 years. He appeals.

The background for the charge reveals that defendant, his wife Patsy, and Smith obtained three blank OK Tire Production Company checks from an unnamed individual. They proceeded to the Leonard Shop Rite store in Grand Rapids.

---

[1] MCLA 750.505; MSA 28.773 provides:

"Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years or by a fine of not more than $10,000.00, or both in the discretion of the court."

[2] MCLA 750.249; MSA 28.446 provides:

"Any person who shall utter and publish as true, any false, forged, altered or counterfeit record, deed, instrument or other writing mentioned in the preceding section, knowing the same to be false, altered, forged or counterfeit, with intent to injure or defraud as aforesaid, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 14 years."

[3] MCLA 750.157a; MSA 28.354(1) provides in part:

"Any person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy punishable as provided herein:

"(a) except as provided in paragraphs (b), (c) and (d) if commission of the offense prohibited by law is punishable by imprisonment for 1 year or more, the person convicted under this section shall be punished by a penalty equal to that which could be imposed if he had been convicted of committing the crime he conspired to commit and in the discretion of the court an additional penalty of a fine of $10,000.00 may be imposed."

Defendant and his wife entered the store, chose several items for purchase, and presented to the cashier a check drawn upon Central Bank in the amount of $111.20 made out to Glenn T. Bowles. At the time, defendant was wearing a green shirt with the name "Glenn T. Bowles" embroidered over a pocket. The cashier assumed defendant's identity as being that of Glenn T. Bowles and honored the check without further identification.

The trio then proceeded to Meijers, Inc., where their suspicious conduct was noticed by Alexander Arends, an investigator employed by Meijers. Arends followed as Patsy Potts and Smith, who had switched shirts with Norah Potts, entered the store and began filling the cart with merchandise in a hurried manner. Arends contacted the store manager, David VanderVeen, cautioning him to insure that the cashier obtain proper identification should there be an attempt to pay by check. Smith was unable to produce a driver's license at the check-out counter. Smith and Patsy Potts then left Meijers, leaving the goods they had selected at the check-out counter. Arends followed as they left Meijers. He stopped to phone Mr. VanderVeen, who advised Arends of the particular type of check attempted to be negotiated. Arends then phoned the police department, describing the automobile and relating the circumstances of the attempted uttering and publishing. This information was relayed to patrolling officers, and soon after, the defendant and his accomplices were stopped. At the officers' request, Patsy Potts exited the car. Because the convertible top was down, an officer saw a piece of paper lying in front of the driver's seat which later proved to be a check from the OK Tire Production Company. The trio was then arrested. A further search of the front seat area

revealed an additional OK Tire Production Company check, a Blue Cross identification card, and a social security card, all issued in the name of Glenn T. Bowles.

Later, at police headquarters, inspection of Patsy Potts' purse revealed six additional OK Tire Production Company checks. While attempting to raise the convertible top of the vehicle, the open trunk revealed the groceries purchased earlier at Shop Rite stores.

Kenneth VanderSchuur, formerly associated with the OK Tire plant, testified that the company's account with Central Bank had been closed out in January, 1969. He had no knowledge of a J. Van Henson, whose apparently authorized signature appeared on the checks. He had no knowledge of anyone by the name of Glenn T. Bowles.

At the trial, Glenn T. Bowles testified that he was never employed by OK Tire Production Company, knew nothing of the payroll checks from OK Tire issued to him, and had never owned a green work shirt with his name embroidered on a pocket. He further identified his Blue Cross card, social security card, and selective service card which had been missing since September 7, 1970. An employee of the Nye Uniform Company testified that the green work uniform in question was sold by him on September 4, 1970, to the defendant, and the name Glenn T. Bowles was embroidered on the shirt at the store.

Four issues are raised and they will be discussed *seriatim.* Defendant objects to amendments to the original information clarifying minor details as to the corporate status of the victim of the crime, and rectifying a clerical error concerning the crime charged in the information. It is contended that these amendments were substantial, surprising,

and misleading in sufficient degree to constitute prejudicial error. We disagree.

Spartan, Inc., the original name of the victim listed on the information, was properly amended to read "Shop Rite Market of Grand Rapids, Inc.", a subsidiary of Spartan Stores. The crime of common law conspiracy was amended to reflect the statutory provisions appearing in MCLA 750.157a; MSA 28.354(1). The court properly found no error in amending the name of Spartan, Inc., in order to clarify the actual corporate ownership of Shop Rite stores. The trial court has broad discretion to permit amendments to the information at any time, even after the trial has commenced. *People v Coles,* 28 Mich App 300, 302 (1970). Further, MCLA 767.76; MSA 28.1016 provides in part:

"The court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or omission in form or substance or of any variance with the evidence."

Defendant was in no way surprised or prejudiced by the amendment and a full and complete preliminary examination was obtained, though reference was made to the victimized premises as being Leonard Shop Rite Market. Likewise, prejudice did not result from an amendment to the information changing the crime from common law to statutory conspiracy. Common law conspiracy is defined in 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1224, pp 1615–1616, as follows:

"To constitute a criminal conspiracy, there must be a combination of two or more persons, by some concerted act, to accomplish some criminal or unlawful purpose, or to accomplish some lawful purpose, not in itself criminal, by criminal or unlawful means.

* * *

"The elements of the offense are: (1) a combination or agreement, express or implied, between two or more persons to; (2) commit an illegal act, or; (3) to commit a legal act in an illegal manner.

*  *  *

"The gist of conspiracy is the unlawful combination and agreement."

MCLA 750.157a; MSA 28.354(1) defines conspiracy as:

"Any person who conspires together with one or more persons to commit an offense prohibited by law or to commit a legal act in an illegal manner is guilty of the crime of conspiracy * * * ."

Both charges require the same proof. An amendment calling for the same defense as would the original charge cannot be considered surprising or misleading where the defendant is sufficiently apprised of the nature of the offense. *People v White,* 22 Mich App 65 (1970); *People v Morris,* 23 Mich App 688, 692 (1970).

Further, it cannot be argued that the statutory offense of conspiracy imposed a greater maximum sentence since the defendant was given the benefit of the five-year maximum sentence as provided by statute dealing with indictable common-law offenses. We conclude the above-mentioned amendment did not constitute prejudice to the defendant.

Defendant next contends his conspiracy-to-utter-and-publish conviction was not supported beyond a reasonable doubt by the direct and circumstantial evidence submitted. Our analysis dictates otherwise. The testimony of James Roy Smith offered direct evidence of defendant's complicity in the crime of conspiracy to utter and publish a forged check. Smith revealed that the checks were made out to Glenn T. Bowles. Possession of the forged

checks, the embroidered shirt, and the stolen identification belonging to Glenn T. Bowles leaves little doubt as to whether a conspiracy to utter and publish existed. Defendant was unmistakably identified by the cashier at Shop Rite and the salesman of the embroidered shirt. Where valid evidence is before a jury, its determination is final. This Court will not review cases anew solely on the evidence. *People v Szczytko,* 40 Mich App 161 (1972). Sufficient evidence was introduced which, if believed, would support defendant's guilt beyond a reasonable doubt.

Defendant next argues that investigator Arends had no reasonable ground to believe defendant was in possession of stolen checks. Consequently, the evidence seized by the police was a product of an illegal search. The facts of the case do not support this reasoning.

A limited search of defendant's automobile was made incident to a lawful arrest. The sequence of events, beginning with investigator Arends' observation of the suspicious conduct by defendant and the others, the subsequent attempt to negotiate the forged instrument, Arends' notification to the police dispatcher of defendant's activities, the response of the police officers in apprehending the defendant, and the concomitant seizure of an OK Tire Production Company check along with identification belonging to Glenn T. Bowles established probable cause to stop, search, and ultimately arrest the defendant. The circumstances of this case clearly fall within the guidelines set forth in *Draper v United States,* 358 US 307, 313; 79 S Ct 329, 333; 3 L Ed 2d 327, 332 (1959):

"Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy informa-

tion [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Carroll v United States,* 267 US 132, 162 [45 S Ct 280, 288; 69 L Ed 543, 555; 39 ALR 790, 805 (1925)]."

See, also, *People v Charles D Walker,* 385 Mich 565 (1971); *Adams v Williams,* 407 US 143; 92 S Ct 1921; 32 L Ed 2d 612 (1972). Further, the check observed on the floor by the front seat invokes the "plain-view doctrine" enunciated in *Harris v United States,* 390 US 234, 236; 88 S Ct 992, 993; 19 L Ed 2d 1067, 1069 (1968):

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

This theory is also applicable to the seizure of the grocery bag found in the trunk of the car which became visible upon raising the convertible top in an attempt to protect the interior of defendant's car. *Harris, supra,* involved a similar situation, evidence being discovered while officers were attempting to close the windows of a vehicle in order to protect it from the elements. Under these circumstances, the search of defendant's car incident to lawful arrest was proper, and the fruits of the search were properly admitted into evidence.

Finally, defendant claims the alleged co-conspirator, James Roy Smith, as a witness in this case, changed his testimony concerning facts vital to conviction of defendant, claiming Smith's testimony lacked credibility since he had been told he would not be sentenced until after defendant's trial. We agree, however, with the prosecutor's claim that this contention is controlled by *People v Sawicki,* 4 Mich App 467, 475 (1966), citing from

*People v Zesk,* 309 Mich 129 (1944), which quoted 1 Gillespie, Michigan Criminal Law & Procedure, § 379 (2 Gillespie [2d ed], § 663, p 851).

" 'The credibility of an accomplice, like that of any other witness, is exclusively a question for the jury, and it is well settled that a jury may convict on such testimony alone * * * .'

"Also, see, *People v Wallin* (1885), 55 Mich 497; *People v Dumas,* 161 Mich 45 (1910); and *People v McCrea,* 303 Mich 213 (1942).

"In a criminal case it is not only proper but it is the duty of counsel for defendant to place before the jury all circumstances surrounding the people's witness upon the stand, as well as any fact which would have any reasonable tendency to affect their credibility. It is the function of the jury to decide first if the witness is interested, and second if the witness' interest has affected the credibility of his testimony."

It was not error for the jury to determine the credibility of James Roy Smith.

A review of the issues before us convinces the Court that the conviction should be affirmed.

All concurred.