PEOPLE v WHITE

OPINION OF THE COURT

1. SEARCHES AND SEIZURES—ARREST—PLAIN VIEW—EVIDENCE.

An arresting officer's seizure without an arrest or search warrant of a check and driver's license which were shoved down into the back seat of a car but partially visible to anyone looking inside the car was not permissible under the plain view doctrine because the evidence taken was not contraband since at the time the police officer saw the evidence he had no way of knowing that it was evidence of a crime; unlike a gun, knife, narcotics, alcoholic beverages or obvious contraband, the driver's license and check did not become evidence of a crime until further investigation tied it into the case.

2. SEARCHES AND SEIZURES — VALIDITY — EVIDENCE — SUBSEQUENT EVENTS.

The validity of the seizure of the evidence cannot be tested by subsequent events that substantiate the fact that the matter seized was in fact used as part of the commission of a crime; the validity of the seizure must be determined by the facts at the time of the taking.

3. ARREST—CASHING BAD CHECKS—PROBABLE CAUSE.

The mere fact that the accused, a black male, a stranger to an area, sought to cash a check at a time when merchants were being victimized by a ring of black male check cashers, standing alone, is not such a fact as would lead an ordinary prudent person to believe that the accused had committed or was committing a crime and an arrest made by a police officer on such a basis was not a valid arrest; therefore seizure of challenged evidence cannot be sustained as being made incident to a valid arrest.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arrest § 5.
[2] 47 Am Jur, Searches and Seizures § 54.
[3] 32 Am Jur 2d, False Imprisonment §§ 77–80.
[4–7] 5 Am Jur 2d, Arrest §§ 24, 25, 32.

DISSENT BY QUINN, J.

4. ARREST—WITHOUT WARRANT—PROBABLE CAUSE.

*A peace officer may arrest without a warrant when he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it (MCLA 764.15[d]).*

5. ARREST—WITHOUT WARRANT—PROBABLE CAUSE.

*An appellate court will not isolate facts or beliefs from their surrounding circumstances in determining the existence of what has come to be called probable cause for arrest without a warrant; its existence depends in every case upon the peculiar circumstances confronting the arresting officer, and he makes his determination, and an appellate court reviews it, not as a legal scholar determines the existence of consideration in support of a promise, but as a man of reasonable prudence and caution would determine whether the person arrested has committed a felony.*

6. ARREST—WITHOUT WARRANT—PROBABLE CAUSE.

*A police officer had probable cause for arrest without a warrant of a Negro male for uttering and publishing where he knew that merchants in the area had been plagued by a series of bad checks cashed by Negro males, that the merchants had been warned to notify the police in the event of suspicious circumstances, that Negro males shortly before the arrest had attempted to cash checks at several places of business, one of which obtained the description and license number of the car containing the Negro males, and at the latter place of business, the police officer was advised that the person attempting to cash the check left when asked for better identification.*

7. ARREST—WITHOUT WARRANT—EVIDENCE.

*An experienced police officer who was present when an arrest without warrant was made for uttering and publishing acted properly when he retrieved a check and driver's license after seeing a corner of the check protruding from the back of an automobile front seat, because he had a right to be in the position from which he viewed the protruding check and he knew that the officers were looking for checks; search was not involved and the seizure was reasonable.*

Appeal from Tuscola, James P. Churchill, J.

Submitted Division 2 January 6, 1972, at Lansing.
(Docket No. 10103.) Decided April 23, 1973.

Roy L. White was convicted of uttering and
publishing after his motion to suppress evidence
was denied. Defendant appealed. Cause remanded
for an evidentiary hearing on defendant's motion
to suppress evidence, but the Court of Appeals
retained jurisdiction. Motion denied by circuit
court. Reversed and remanded.

*Henry L. Greenwood,* for defendant on appeal.

Before: LESINSKI, C. J., and McGREGOR and
QUINN, JJ.

LESINSKI, C. J. This cause was remanded to the
trial court for proceedings which were held on
March 2, 1972. An evidentiary hearing was had on
a motion to suppress evidence. The questioned
evidence, exhibits 1 and 2, was a driver's license
and a check which were found in the vehicle
occupied by the defendant. Upon conclusion of the
evidentiary hearing to suppress the evidence, the
trial court found that the check and driver's li-
cense were not found as a result of a search. The
trial court found that the check and driver's li-
cense were in the plain view of the arresting
officer as he looked into the defendant's vehicle.
The check and driver's license were shoved down
into the back seat but a corner was visible to
anyone looking inside the car.

The trial court upheld the seizure of exhibits 1
and 2 in this case on the basis of the "plain view
doctrine", *Harris v United States,* 390 US 234; 88
S Ct 992; 19 L Ed 2d 1067 (1968); *People v Kuntze,*
371 Mich 419 (1963), the effect of which is to say
that no search occurred; that the offensive matter

was plainly visible and thus subject to seizure without an arrest or search warrant.

We find that the "plain view doctrine" has no applicability to the facts of this case. The evidence taken was not contraband. At the time the police officer saw the evidence he had no way of knowing that it was evidence of a crime. Unlike a gun, knife, narcotics, alcoholic beverages or obvious contraband, the driver's license and check did not become evidence of a crime until further investigation tied it into the case. As the United States Supreme Court said in *Coolidge v New Hampshire,* 403 US 443, 461–462; 91 S Ct 2022, 2035–2036; 29 L Ed 2d 564, 580 (1971):

"The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears. And surely there is nothing in this case to invoke the meaning and purpose of the rule of *Carroll v United States* [267 US 132; 45 S Ct 280; 69 L Ed 543; 39 ALR 790 (1925)]—no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile. In short, by no possible stretch of the legal imagination can this be made into a case where 'it is not practicable to secure a warrant,' *Carroll, supra,* at 153 [45 S Ct at 285; 69 L Ed at 551; 39 ALR at 800], and the 'automobile exception,' despite its label, is simply irrelevant."

The validity of the seizure of the evidence cannot be tested by subsequent events that substantiate the fact that the matter seized was in fact used as part of the commission of a crime. The validity of the seizure must be determined by the facts at the time of the taking. *People v Iverson,* 34 Mich App 519 (1971); *People v Carter,* 387 Mich 397 (1972).

In the case before us, merchants in the community of Vassar, prior to the arrest of the defendant on October 18, 1969, were being victimized by a bad check cashing ring resulting in the loss of several hundred dollars. The chief of police of the City of Vassar subsequently warned merchants "that if colored subjects came and tried to cash checks, to make sure they got proper identification, or to try and detain them and call the police". The police chief told Officer Harry Schaub about the bad check operation.

On the evening of October 18, 1969, Officer Schaub received a call relative to Negro males trying to cash a check at Uncle Ray's, Atkins Hardware, a Sunoco service station, and other Vassar businesses. At the Sunoco station he received a description of the car and the license number of the vehicle occupied by the defendant. Officer Schaub enlisted the aid of a Millington policeman, Officer Samdal, and arrested the defendant with other suspects at Werner's Gas Station on M-15 south of Vassar.

Officer Schaub testified at the evidentiary hearing on the motion to suppress the evidence taken at the time of the arrest of defendant. His testimony indicated the only basis for his arrest was the fact that bad checks had previously been passed in the area and the fact that defendant and his companions had tried to cash checks in several Vassar establishments that night. Officer Schaub admitted he would have arrested defendant even if he had not been connected with the previous check cashing ring. Officer Schaub testified that he had *not* been told that there was anything wrong with the identification or check offered at Uncle Ray's. Police Chief Horwath admitted that mere examination of the check would not disclose that it was an invalid document.

At the time of the arrest Officer Schaub had no information which identified the defendant as being a person who had previously passed bad checks or that he looked like a person known to have passed bad checks in the area. The officer had no information that indicated the driver's license was false identification or that the check that was taken was or appeared to be an invalid instrument. At the time of the arrest and seizure he had no information that would cause him to know that the identification and check he viewed in the car were one and the same or looked like that which was displayed at Uncle Ray's. Clearly, the identification and check did not take on the stature of evidence of a crime at the scene of the seizure. It was only after a further investigation process, after the arrest, that they attained the status of evidence of a crime.

No argument is advanced that the actions of defendant and his companions were out of the ordinary or indicative of criminal activity. At the time Officer Schaub came in contact with defendant he was not seen to be committing a criminal offense; nor was Officer Schaub in possession of information that a crime was committed and that defendant probably committed it. There was no valid basis for the arrest of the defendant at the time it was made and thus seizure of challenged evidence cannot be sustained as being made incident to a valid arrest.

Counsel for defendant properly argues that based on the facts of this case one would not even have "probable cause" to obtain a search warrant. The mere fact that a black male, a stranger to the Vassar area, sought to cash a check at a time when merchants were being victimized by a ring of black male check cashers, standing alone as in this

case, is not such a fact as would lead an ordinary prudent person to believe that the accused had committed or was committing a crime. At the time of the arrest there was nothing known to the officer to tie the defendant into a bad check cashing ring.

We reverse, order exhibits 1 and 2 suppressed, and the cause remanded.

Reversed and remanded.

McGregor, J., concurred.

Quinn, J. *(dissenting)*. My reading of the record discloses facts which fully support the holdings of the trial court that the arrest was legal and that the evidence sought to be suppressed was within the "clear view" of the officer who seized it.

A peace officer may arrest without a warrant, "when he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it;", MCLA 764.15(d); MSA 28.874(d).

This statutory provision was before the Supreme Court in *People v Harper,* 365 Mich 494 (1962). At pages 500, 501, speaking to the determination of the existence of probable cause to arrest without a warrant, a unanimous Court said:

" * * * we will not isolate facts or beliefs from their surrounding circumstances in determining the existence of what has come to be called probable cause for arrest without a warrant.

"Its existence depends in every case upon the peculiar circumstances confronting the arresting officer. [Citing a case.] He makes his determination, and we review it, not as a legal scholar determines the existence of consideration in support of a promise, but as a man of reasonable prudence and caution would deter-

mine whether the person arrested has committed a felony."

This Court applied the same test in *People v Surles,* 29 Mich App 132 (1970).

What did Officer Schaub know at the time of the arrest in question? He knew that merchants in Vassar had been plagued with a series of bad checks cashed by Negro males. He knew that the merchants had been warned of the situation and that they had been advised to obtain positive identification from strangers attempting to cash checks, and to notify the police in the event of suspicious circumstances.

On the night of the arrest and within about two hours of the arrest, Officer Schaub knew that two Negro males attempted to purchase groceries at Uncle Ray's by check, and that when the cashier requested further identification, they left the store and the groceries and never returned. Thereafter, Officer Schaub knew that Negro males attempted to cash checks at several other places of business, including the Sunoco station. From the station operator Officer Schaub learned the description and license number of a yellow Cadillac containing three Negro males who had attempted to cash a check at the station.

At the gas station where the arrest occurred and prior thereto, Officer Schaub was advised by the operator of the gas station that defendant had attempted to cash a check. Prior to arrest, Officer Schaub requested registration for the Cadillac which fit the description received at the Sunoco station. In response to this request, defendant handed Officer Schaub a registration which matched the physical description of the vehicle, but the license plate number on the registration

was different than the one license plate number on the vehicle.

In my opinion, with this knowledge and under these circumstances Officer Schaub acted as a man of reasonable prudence and caution in making the questioned arrest.

Officer Samdal, who saw a corner of a check protruding from the back of the front seat and retrieved it and the driver's license in question, had had nine years experience with the state police. He had a right to be in the position from which he viewed the protruding check. He also knew that they were looking for checks. Search was not involved and the seizure was reasonable, *People v Tisi,* 384 Mich 214 (1970); *People v Potts,* 44 Mich App 722 (1973).

I would affirm.