PEOPLE v RIDGEWAY

1. CRIMINAL LAW—CONSTITUTIONAL LAW—DOUBLE JEOPARDY—SAME TRANSACTION TEST—TRAFFIC VIOLATION—FELONY CHARGES.

The "same transaction" double jeopardy test does not preclude the prosecution of a defendant on felony charges after the defendant has already pleaded guilty to a traffic offense where the arrest for the traffic violation led the arresting officers to find contraband in the defendant's car leading to the arrest on the felony charges.

2. SEARCHES AND SEIZURES—TINFOIL PACKET—TRAFFIC VIOLATION—PLAIN VIEW.

A police officer's discovery of a tinfoil packet was not the result of an improper search where the discovery was made after the officer had properly stopped a defendant for a traffic violation and the defendant had exited from the car, leaving the door open, and the packet was in plain view through the open door.

3. SEARCHES AND SEIZURES—PLAIN VIEW—PROBABLE CAUSE—EVIDENCE OF CRIME.

The plain view exception to the search warrant requirement does not authorize seizing and examining everything in sight; only those objects which a police officer has probable cause to believe are evidence of a crime may be seized and examined.

4. SEARCHES AND SEIZURES—AUTOMOBILES—TRAFFIC VIOLATION—TINFOIL PACKET—PLAIN VIEW—SUGGESTION OF CRIME.

The stopping of a defendant solely for a routine traffic violation

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 342, 343.

68 Am Jur 2d, Searches and Seizures § 39.

Validity, under federal constitution, of warrantless search of automobile—Supreme Court cases. 26 L Ed 2d 893.

[2–4, 9, 11] 68 Am Jur 2d, Searches and Seizures §§ 23, 39, 88.

[5] 68 Am Jur 2d, Searches and Seizures §§ 41 *et seq.*

[8] 68 Am Jur 2d, Searches and Seizures §§ 39, 58, 103.

Lawfulness of search of motor vehicle following arrest for traffic violation. 10 ALR3d 314.

[9] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 45, 47.

What constitutes "possession" of a narcotic drug proscribed by § 2 of the Uniform Narcotic Drug Act. 91 ALR2d 810.

does not justify a search and seizure of a tinfoil packet found in plain view inside the defendant's car where there is absolutely nothing about the scenario which suggests a crime other than the traffic offense.

5. SEARCHES AND SEIZURES—AUTOMOBILES—TRAFFIC VIOLATIONS—WARRANT REQUIREMENT—PLAIN VIEW—EXIGENT CIRCUM-STANCES—TINFOIL PACKET.

The plain view exception to the necessity for a search warrant before a search is made requires, among other things, a show-ing that some exigent circumstances precluded police officers from obtaining a warrant for further examination of an unex-pectedly discovered item; there were sufficient exigent circum-stances to seize a tinfoil packet which a police officer found in plain view in a defendant's automobile, and which the police officer had probable cause to believe contained narcotics, where the defendant probably would not be placed in custody for the traffic violation for which he was stopped and the defendant would be able to drive away with the car and the possible evidence before a warrant could be obtained; however, there is not an all powerful motor vehicle exception to the warrant requirement which justifies a full search of a vehicle whenever police officers suspect wrongdoing.

6. DRUGS AND NARCOTICS—PROBABLE CAUSE—AUTOMOBILES—TINFOIL PACKET—OFFICER'S EXPERIENCE.

A police officer did have probable cause to believe that a tinfoil packet found in a defendant's car after the defendant was stopped for a traffic violation contained a controlled substance where the police officer, based on his experience in narcotics law enforcement, knew that tinfoil packets like the one on the floor of the car often contain narcotics.

7. SEARCHES AND SEIZURES—NARCOTICS—AUTOMOBILES—ARREST WITHOUT WARRANT—PROBABLE CAUSE.

A police officer who has made a proper search and seizure of a packet containing narcotics found in a defendant's car has probable cause to make an arrest of the defendant for posses-sion of a controlled substance without first obtaining a warrant for the arrest.

8. SEARCHES AND SEIZURES—PURSE—CONCEALED WEAPON—AUTOMO-BILES—TRAFFIC VIOLATION—SEARCH INCIDENT TO ARREST—PRO-TECTIVE FRISK.

A search by police officers of a defendant's purse without a

warrant which turned up a concealed weapon, after the defendant had been stopped for a traffic violation and then arrested for possession of a controlled substance, when a packet containing narcotics was discovered in plain view in the car, could be justified under either of two theories: (1) a search incident to an arrest, or (2) a protective frisk, where the police officers still needed to see the defendant's identification, contained in the purse, relative to the traffic offense.

9. Drugs and Narcotics—Evidence—Possession—Actual or Constructive Possession—Elements of Offense.

Actual or constructive possession is one of the elements which must be proven in a prosecution for possession of a controlled substance.

10. Drugs and Narcotics—Evidence—Automobiles—Possession of Narcotics—Circumstantial Evidence—Innocent Theory.

Presence in or control over a vehicle in which a controlled substance is found is evidence of possession of the substance; but where the evidence of possession is circumstantial, the evidence is not sufficient unless there is no innocent theory that will, without violation of reason, accord with the facts.

11. Drugs and Narcotics—Evidence—Possession of Narcotics—Automobiles—Evidence of Possession.

There was insufficient evidence to convict a defendant of possession of a controlled substance where there were more than one person riding in the front seat of an automobile where the substance was found and none of the occupants owned the car or had had exclusive possession of the car for an extended period, and where there was no evidence to indicate which, if any, of the occupants actually knowingly possessed the contraband, except that it was closer to the defendant than to the other occupant.

Appeal from Recorder's Court of Detroit, Elvin Davenport, J. Submitted February 7, 1977, at Detroit. (Docket No. 24900.) Decided March 28, 1977. Leave to appeal applied for.

Robert L. Ridgeway was convicted of carrying a concealed weapon in an automobile and possession of cocaine. Defendant appeals. Conviction for carrying a concealed weapon affirmed; conviction for possession of a controlled substance reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training and Appeals, and *Charles P. Kellett,* Assistant Prosecuting Attorney, for the people.

*Milton R. Henry,* for defendant.

Before: BRONSON, P. J., and ALLEN and D. E. HOLBROOK, JR., JJ.

ALLEN, J. A jury convicted the defendant of carrying a concealed weapon in an automobile, MCLA 750.227; MSA 28.424, and possession of a controlled substance (cocaine), MCLA 335.341(4)(b); MSA 18.1070(41)(4)(b). On appeal, defendant argues that the convictions are the products of an illegal search and an illegal arrest, that there was insufficient evidence to support the verdict on the controlled substances count, and that his constitutional double jeopardy rights were violated.

About 6 p.m. on New Year's Day 1974, three police officers saw the defendant driving in a city alley and concluded that he had committed a minor traffic offense.[1] After stopping the defendant's car, one of the officers approached the driver's side of the car while the other two officers approached the passenger side. The defendant got out of his car and waited for the officer.[2] The defendant's passenger remained in the car. As the

---

[1] Defendant was ticketed for failing to stop at a crosswalk when exiting an alley—apparently a violation of a city ordinance.

[2] There was a considerable conflict in the testimony as to both the sequence and the substance of the events which followed. The trial judge, in ruling on motions, chose to believe the police officers and we cannot say that his decision was clearly erroneous. GCR 1963, 517. The factual statements in this opinion are drawn primarily from the prosecution testimony and the legal analyses will assume the prosecution's version of what occurred.

officer approached, he smelled the aroma of burning marijuana. The officer asked the defendant for his identification and vehicle registration; defendant responded that the papers were in his purse inside the car.

During that conversation, the officer noticed what appeared to be a "large tinfoil packet" on the floor of the car near the gas pedal. Without further comment, he reached in, picked up the packet, opened it and discovered that it contained a white powder which turned out to be cocaine. The defendant was immediately placed under arrest for a violation of the controlled substances laws and taken back to the police car.

While this was transpiring on the driver's side of the car (the exact time sequence is not clear), the two officers on the passenger side of the vehicle asked the passenger to leave the car. Because the defendant had said that his identification was in his purse, one of the other two officers removed the purse from the car and opened it before giving it to the defendant because "I didn't know what was in it". It turned out that the purse contained a .44-caliber pistol. That discovery led to the conviction for carrying a concealed weapon.

Before the felony charges went to trial, the defendant pleaded guilty to a minor traffic offense which led to the initial stop. He argued in the trial court and argues on appeal that acceptance of that plea precluded his prosecution on the felony charges because of the "same transaction" double jeopardy test announced in *People v White,* 390 Mich 245; 212 NW2d 222 (1973). The argument is superficially valid, but it has already been anticipated and rejected by the Supreme Court in *Crampton v 54-A District Judge,* 397 Mich 489; 245 NW2d 28 (1976). We reject the defendant's argument on the authority of *Crampton.*

We next address the argument that the cocaine and pistol were discovered during illegal searches. It is conceded that the officers acted properly in stopping the defendant's car for the traffic violation.[3] The first officer saw the tinfoil packet when the defendant left the door open after leaving the car. Up to this point, we have a classic application of the "plain view" rule. *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971), *People v Kuntze,* 371 Mich 419; 124 NW2d 269 (1963). Discovery of the tinfoil packet was not the result of a "search" as that word is used in US Const, Am IV. But what followed was a seizure (picking up the packet) and a search (opening the packet). The plain view exception to the search warrant requirement does not authorize seizing and examining everything in sight. Only objects which the officer has probable cause to believe are evidence of a crime may be seized and examined.

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a *piece of evidence incriminating the accused.* * * * Of course, the extension of the original justification is legitimate only *where it is immediately apparent to the police that they have evidence before them;* the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last. emerges." *Coolidge v New Hampshire, supra,* at 466.

Applied to the present case, the quotation means

---

[3] The officers were plainclothes undercover officers assigned to the Detroit Police Department's special felony prevention squad (STRESS). This Court was not aware that officers assigned to that detail were so diligent in their enforcement of minor traffic ordinances. But the defendant has not argued that the stop was a mere pretext for a search and this Court will not *sua sponte* assume an improper motive.

that the officer could not lawfully seize or examine the tinfoil packet unless he had probable cause to believe that the packet contained evidence of a crime.[4] *People v Nelson Pitts,* 40 Mich App 567; 199 NW2d 271 (1972), *Caver v Kropp,* 306 F Supp 1329 (ED Mich, 1969). At that point, the officers knew that the defendant had committed a minor traffic violation. They also knew that the occupant(s) of the car had been smoking marijuana. Finally, they knew that narcotics—but presumably not marijuana—are ofttimes carried in tinfoil packets. Was this enough to create a probable cause belief that the packet contained incriminating evidence? We examine the bits of knowledge one at a time.

We attach no weight at all to the traffic violation. The violation was one which might be committed by any driver in a careless moment. The defendant stopped when signalled to do so, got out of his car and waited for the officers to approach him. There is absolutely nothing about the scenario which suggests a crime. A valid distinction may be drawn between this case and *People v Rembo,* 73 Mich App 339; 251 NW2d 577 (1977).

[4] The plain view rule also requires a showing that some "exigent circumstance" precluded obtaining a warrant for further examination of the unexpectedly discovered item. *Coolidge v New Hampshire, supra.* On the present facts, we assume that the involvement of a motor vehicle was a sufficient exigent circumstance since the defendant would probably not be placed in custody for the traffic violation and he would otherwise be able to drive away with the car and the possible evidence before a warrant could be obtained. This does not mean that there is an all powerful "car exception" to the warrant requirement which justifies a full search of a car whenever officers suspect wrongdoing. The presence of an automobile is merely a factor to be considered in determining whether exigent circumstances are present which, together with probable cause to believe incriminating evidence is present, will justify application of the "exigent circumstances" exception to the constitutional warrant requirement. *People v White,* 392 Mich 404; 221 NW2d 357 (1974), *Coolidge v New Hampshire, supra, Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970).

Rembo was stopped because he was driving in a dangerously erratic manner. The officer who approached the car could smell both marijuana and alcohol. Upon leaving his vehicle, Rembo had difficulty walking and volunteered that he had been smoking marijuana. In those circumstances, the traffic violation might be considered in determining whether the officers had probable cause to believe that other drugs might be present. But that would not be a valid inference in the present case. The only element shared by this case and *Rembo* is the smell of burning marijuana. Here, the traffic violation could not support an inference of criminality. We now consider the importance of the marijuana aroma.

*People v Parisi,* 46 Mich App 322; 208 NW2d 70 (1973), *rev'd other grounds,* 393 Mich 31; 222 NW2d 757 (1974), held that the smell of marijuana provides sufficient probable cause for a warrantless *arrest.* The subsequent reversal of that case[5]—and the holding in *People v Hilber,* 69 Mich App 664; 245 NW2d 156 (1976), that the smell of marijuana *did not* create sufficient probable cause for a warrantless *search*—casts considerable doubt on the precedential value of *Parisi.* Still, possessing marijuana is illegal; and the smell of marijuana would give some cause to suspect that illegal substances were to be found in the car. It is important to note, however, that the officer apparently did not suspect that the tinfoil packet contained marijuana. He suspected—correctly—that the packet contained a more dangerous substance. Since he was not looking for marijuana, the fact that he smelled the marijuana is relevant for our present purposes only to the extent that it might support a

---

[5] *Parisi* was reversed because the original investigatory stop was found to be illegal. The Supreme Court never addressed the subsequent search and arrest.

valid inference that one who smokes marijuana might also be in possession of narcotics or other more dangerous drugs. We are not overly impressed by that inference, but it may be entitled to some weight.

We now consider the strongest support for a finding of probable cause, *viz.,* the officer's knowledge that tinfoil packets like the one on the floor of the car often contain narcotics. Given the officer's experience in narcotics law enforcement, his suspicion that the packet contained some controlled substance must be respected. The question is extremely close, but we believe that the officer did have probable cause to believe that the packet contained a controlled substance.

Given that the seizure and search were proper, the officer obviously had probable cause to make a warrantless arrest for possession of a controlled substance.

Given a proper arrest, the search of the purse which followed may properly be classified as a search incident to a lawful arrest, *Chimel v California,* 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969). Or, without reference to the arrest, we would hold that the gun was discovered during a protective frisk as approved by *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). A possible objection to either holding would be that the gun was inside the car and thus not within the defendant's immediate reach. But the officers still had not seen the defendant's identification. Whether viewed as incident to an arrest or as part of a continuing on-the-scene investigation of suspicious conduct, someone was going to open the purse and produce the identification. Given the circumstances of this case, we do not believe that the officers were required to allow the defendant

access to the purse without first checking the contents. A number of Federal decisions involving similar circumstances support our conclusion. *United States v Murrie,* 534 F2d 695 (CA 6, 1976), *United States v Poms,* 484 F2d 919 (CA 4, 1973), *United States v Beasley,* 479 F2d 1124 CA 5, 1973), and *United States v Vigo,* 487 F2d 295 (CA 2, 1973).

Assuming *arguendo* that both the cocaine and the pistol were lawfully discovered, defendant next argues that there was insufficient evidence to convict him of possessing the cocaine. At trial, the police officers admitted that the only reason they charged the defendant rather than his passenger was because the tinfoil packet was found on the driver's side of the car floor near the gas pedal.[6] The car belonged to the defendant's brother. That factor is ambivalent since it is not the same as ownership but still is better evidence of control over the vehicle and its contents than would be provided in a situation where a suspect is momentarily using a stranger's car. Contrast *People v Harper,* 365 Mich 494; 113 NW2d 808 (1962).

The defense theory at trial was that someone else—probably the passenger (but never denying that it might have been the defendant's brother)—must have left the cocaine packet on the floor of the car. Actual or constructive possession is one of the elements which must be proven in a prosecu-

---

[6] At some point during the interrogation following arrest, the defendant told the arresting officers that his passenger had nothing to do with either the gun or the cocaine. That statement was suppressed by the trial judge because it was obtained in violation of *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). The testimony was admitted during the prosecutor's rebuttal case, but only for purposes of impeaching the defendant's attempts to implicate the passenger. The testimony could only be considered for impeachment purposes. *Oregon v Hass,* 420 US 714; 95 S Ct 1215; 43 L Ed 2d 570 (1975). We may not consider it as substantive evidence supporting the possession charge.

tion for possession of a controlled substance. *People v Gould,* 61 Mich App 614; 233 NW2d 109 (1975). Presence in or control over a vehicle in which the substance is found is evidence of possession. But where, as here, the evidence of possession is circumstantial, the evidence is not sufficient unless there is no innocent theory possible that will, without violation of reason, accord with the facts. *People v Davenport,* 39 Mich App 252; 197 NW2d 521 (1972). One statement in that case is especially applicable here:

"Davenport cannot be convicted on the theorem that *someone* must have been in possession of the heroin.

\*  \*  \*

"Clearly there were innocent theories—unrebutted by any evidence—which accord with the facts. It is as likely that Ardis Phillips or anyone else living in the house \* \* \* was in possession of the heroin." (Emphasis in original.) 39 Mich App, at 256–257.

The defendant testified that he knew nothing about the cocaine or how it came to rest on the floor of the car. Attempting to rebut that testimony, the prosecutor makes the following argument on appeal:

"Not only was Officer Davis able to clearly see the shiny tinfoil pack standing outside the car, but the pack was in a place where the defendant, unless he was nearly sightless would have had to have seen in order to operate the vehicle."

Why then did the defendant get out of the vehicle to meet the officers and stand alongside his car with the door open and the dash light shining on

the spot where the officer saw the packet? Several reasonable inferences suggest themselves. (1) The defendant simply panicked. (2) The defendant had been in possession of the packet and it had accidentally fallen to the floor without his knowledge. (3) The packet had been left on the floor by the owner of the car or some previous occupant. (4) The passenger had secretly placed the packet there in order to rid himself of incriminating evidence.[7] Two of these inferences are inculpatory, the other two are exculpatory. Based on the admissible evidence, it would be impossible to make a choice beyond a reasonable doubt. Therefore, we hold that the evidence was insufficient to support the conviction for possession of a controlled substance. Where more than one person is riding in the front seat of a car in which contraband is discovered and none of the occupants owns the car or has had exclusive possession of the car for an extended period and there is no evidence to indicate which, if any, of the occupants actually knowingly possessed the contraband except the fact that it was found lying closer to one occupant than to the others, the evidence is insufficient to convict that occupant of a possession offense. *People v Davenport, supra, People v Summers,* 68 Mich App 571; 243 NW2d 689 (1976).

The conviction for carrying a concealed weapon in an automobile is affirmed. The conviction for possession of a controlled substance is reversed.

Judge Holbrook, Jr., concurs in result only.

---

[7] The officers did testify that, from the time they pulled into the alley behind the defendant's car, they had both occupants so completely in view that it would have been impossible for the passenger to make the slightest "furtive gesture" without being detected. We find that testimony too incredible to be believed.