PEOPLE v STRONG

1. APPEAL AND ERROR—SEARCHES AND SEIZURES—MOTION TO SUPPRESS
   —EVIDENCE.

   The Court of Appeals may not consider amplifying testimony
   taken at trial in determining whether the circuit court cor-
   rectly denied a motion to suppress evidence of contraband
   seized from a vehicle in which a defendant was riding; only the
   testimony taken at a preliminary examination may be consid-
   ered.

2. SEARCHES AND SEIZURES—AUTOMOBILES—PROBABLE CAUSE—BUR-
   DEN OF PROOF—WARRANT REQUIREMENTS—REASONABLENESS OF
   SEARCH—SUBSEQUENT EVENTS.

   Probable cause to believe that a felony has been or is being
   committed is necessary to justify a search of an automobile
   without a warrant; the burden is on the people to show that
   the police acted reasonably, based upon probable cause and in
   response to an exigent circumstance, thus bringing the search
   within one of the established exceptions to the warrant require-
   ment; in passing upon the reasonableness of a search, only
   those facts known to the officers at the time of the search may
   be considered, events subsequent to a seizure may not be
   considered.

3. SEARCHES AND SEIZURES—AUTOMOBILES—PARK CAMPING VIOLA-
   TION.

   No inference of criminal activity can be drawn which would

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 413, 425, 426.
   Modern status of rule governing admissibility of evidence obtained
   by unlawful search and seizure. 50 ALR2d 531.
[2] 29 Am Jur 2d, Evidence § 425.
   68 Am Jur 2d, Searches and Seizures §§ 43, 45, 60, 99.
[3] 68 Am Jur 2d, Searches and Seizures § 42.
[4, 7] 68 Am Jur 2d, Searches and Seizures §§ 40, 68.
   Search and seizure: "Furtive" movement or gesture as justifying
   police search. 45 ALR3d 581.
[5, 6] 68 Am Jur 2d, Searches and Seizures §§ 41–45.
   Validity, under Federal constitution, of warrantless search of auto-
   mobile—Supreme Court cases. 26 L Ed 2d 893.

justify the search of an automobile from a violation because of a lack of a park camping registration.

4. Searches and Seizures—Automobiles—Furtive Gesture—Circumstantial Evidence—Impelling Certainty—Mere Suspicion.

Furtive gestures by occupants of automobiles from which an inference of criminality may be drawn must be obviously evasive actions; an inference of criminality may be drawn from circumstantial evidence only if it follows as an impelling certainty.

5. Searches and Seizures—Automobiles—Suspicions—Contraband—Probable Cause.

Mere suspicion that an automobile contains contraband is not probable cause for a search or seizure.

6. Searches and Seizures—Automobiles—Narcotic Evidence—Admissibility—Probable Cause.

Narcotic evidence obtained by means of a search of and seizure from an automobile is inadmissible where a police officer had insufficient reason to suspect that an occupant possessed a controlled substance.

7. Searches and Seizures—Automobiles—Furtive Gesture—Evasive Actions—Evidence—Admissibility—Probable Cause.

A police officer's observation of an automobile occupant turning and leaning between bucket seats is not a furtive gesture which can be defined as an obviously evasive action, and evidence seized without a warrant after a search because of the observation of such a gesture is inadmissible because it was not obvious to the officer that the occupant's movement was motivated by a desire to hide something, and there could be any number of reasons for making the movement.

Appeal from Livingston, Bert M. Hensick, J. Submitted June 10, 1977, at Lansing. (Docket No. 28792.) Decided August 8, 1977.

Robert Strong was convicted of possession of phencyclidine. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Frank R. DelVero,* Prosecuting Attorney, (Prosecuting Attorneys Ap-

pellate Service, *Mark I. Leach,* Assistant Attorney General, of counsel), for the people.

*Muller, Muller, Smith & Greenblatt,* for defendant.

Before: DANHOF, C. J., and T. M. BURNS and A. E. KEYES,* JJ.

DANHOF, C. J. On February 17, 1976, defendant was convicted by a jury of possession of phencyclidine, contrary to MCLA 335.341(4)(b); MSA 18.1070(41)(4)(b). He now appeals by right.

Before trial, defense counsel moved in the circuit court to suppress from use in evidence the contraband seized from the vehicle in which defendant was riding. For purposes of ruling on the motion to suppress, the circuit court had before it only the preliminary examination testimony. On appeal, we may not consider amplifying testimony taken at trial; in determining whether the circuit court correctly denied the motion to suppress we are confined to the testimony taken at the preliminary examination. *People v Charles D Walker,* 385 Mich 565, 572–573; 189 NW2d 234 (1971), *People v Zeigler,* 358 Mich 355, 359; 100 NW2d 456 (1960), *People v Murphy,* 28 Mich App 150, 154; 184 NW2d 256 (1970).

Summarized, the transcript of the preliminary examination reveals that on July 3, 1974, Officers Chapman, Mohning, and Gross were stationed at the entrance to the Appleton Campground, in Livingston County, checking to see that vehicles entering the campground after the 10 p.m. park curfew were registered. At about 10:20 p.m. Officer Chapman stopped the van in which defendant was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

a passenger, determined that the occupants were not registered campers, shone his flashlight into the van's interior, and observed two open beer containers on the floor on the passenger's side of the van. Traffic was building up behind the halted van, so Officer Chapman directed the driver to pull into a nearby parking lot.

As the van pulled over, Officer Chapman walked beside the van, near the passenger window. He was no longer shining his flashlight into the interior, and he testified that because the area was unlighted and the sun had set it was "somewhat dark". Sometime during the approximately one minute that it took for the van to reach the parking lot, Chapman observed defendant turn and lean between the van's bucket seats. From his vantage point, Chapman saw only the back of defendant's head and part of his shoulders and upper back; he could not see defendant's hands, lower arms, feet or mouth.

When they stopped, Officer Chapman directed defendant and the driver to exit the vehicle and produce identification. After they complied, Officer Chapman leaned into the van, reached between the bucket seats and under a rug on the floor behind the seats, and withdrew a brown paper bag that he found there. Inside the paper bag he found four plastic bags containing purple and pink pills. Defendant and the driver were charged with open alcoholic beverage container violations, MCLA 436.34(a); MSA 18.1005(1), but these charges were dropped after analysis of the pills revealed they contained phencyclidine.

To justify a warrantless automobile search, there must be probable cause to believe that a felony has been or is being committed. *People v Iverson,* 34 Mich App 519, 526; 191 NW2d 745

(1971). The burden is on the people to show that the police acted reasonably, based on probable cause and in response to an exigent circumstance, thus bringing the search within one of the established exceptions to the warrant requirement. *People v White,* 392 Mich 404, 410; 221 NW2d 357 (1974). In passing upon the reasonableness of a search, only those facts known to the officers at the time of the search may be considered; events subsequent to the seizure may not be considered. *People v White,* 46 Mich App 195, 198; 207 NW2d 921 (1973).

In the present case, Officer Chapman knew the following facts before he conducted the search: The van did not have the necessary park sticker; there were two open beer containers on the floor beside the defendant's feet; and defendant had turned and leaned between the bucket seats while the van was moving toward the parking lot.

We attach no significance to the lack of camping registration, as no inference of criminal activity can be drawn from such a violation. *People v Ridgeway,* 74 Mich App 306, 312; 253 NW2d 743 (1977).

The question thus narrows to whether Officer Chapman's observation of two open beer containers and defendant's movement while the van pulled over gave rise either to reasonable cause to believe that additional open beers were present in the van or reasonable cause to believe that the van contained evidence that a felony had been or was being committed. Under the circumstances of this case we hold that they did not.[1]

First, we can see no logical basis for inferring from the presence of two open beer containers, two

---

[1] For purposes of our analysis, we disregard the obvious fact that possession of open beer in an automobile is not a felony.

occupants, and defendant's movement that additional open containers were present. In any case, it is clear that the scope of Officer Chapman's search, which entailed lifting a rug from the floor of the van, finding a paper bag and opening it to view its contents, exceeded the scope of any reasonable search for additional *open* containers. It would be illogical to infer from the presence of two open beer containers, two occupants, and defendant's movement that an additional open container might be concealed in a paper bag under a rug.

Secondly, we can conceive of no logical inference from the facts known to Officer Chapman that would give rise to probable cause to believe that evidence of other criminality, apart from the open alcoholic beverage container violation, might be present in the van. It cannot be said that those who drink beer while driving are likely to possess narcotics, weapons, stolen goods, or any other evidence of criminality unrelated to an open alcoholic beverage violation.

"Furtive gestures" have been defined as "obviously evasive actions". *People v Nelson Pitts,* 40 Mich App 567, 576; 199 NW2d 271 (1972), *People v Evans,* 3 Mich App 1, 7; 141 NW2d 668 (1966). An inference of criminality may be drawn from circumstantial evidence only if it follows "as an impelling certainty". *People v Davenport,* 39 Mich App 252, 257; 197 NW2d 521; 56 ALR3d 942 (1972).

In *People v Ridgeway, supra,* the officer knew that the defendant had committed a minor traffic violation, that the occupants of the car had been smoking marijuana, and that narcotics are often carried in tinfoil packets such as the one the officer observed in plain view on the floor of the car. For purposes of determining whether there

was probable cause to open the packet and ascertain whether it contained a dangerous drug, the Court attached "no weight at all" to the traffic violation, was "not overly impressed" by the second factor (which we deem far more significant than the open alcoholic beverage containers in the present case), and termed the question "extremely close" even in light of the last factor. *Ridgeway, supra,* at 312, 314. The Court in *Ridgeway* concluded that the officers had probable cause to believe that the packet contained a controlled substance, and therefore upheld the search and seizure.

The present case is distinguishable from *Ridgeway* in two critical respects, however. First, the basis for the inference recognized in *Ridgeway, supra,* at 314, "that one who smokes marijuana might also be in possession of narcotics or other more dangerous drugs", is absent here; defendant had an open beer, not marijuana.[2] Secondly, the foil packet in *Ridgeway* was in plain view, thus bringing into play the suspicion of an experienced narcotics law enforcement officer that the packet might contain a controlled substance, which suspicion the Court said, "must be respected". *Ridgeway, supra,* at 314. In the present case, the paper bag containing contraband was not in view; indeed, Officer Chapman testified that he thought defendant might have been hiding beer, and he clearly had no "respectable suspicion" that defendant had hidden a controlled substance.[3]

[2] We, like the Court in *Ridgeway,* are not overly impressed by that inference.

[3] Since he testified only that he is a Conservation Officer for the Department of Natural Resources, there is no basis on the record for concluding that Officer Chapman is an experienced narcotics law enforcement officer. He testified that when he found the paper bag he "assumed that it might have been marijuana or something but I didn't know what it was".

In *People v Hall,* 40 Mich App 329; 198 NW2d 762 (1972), this Court reversed the trial court's ruling granting defendant's motion to suppress. There the police officer had observed a plastic bag and a bottle, which he later determined contained marijuana, on the seat only a moment before defendant threw his jacket over them. The Court said:

"Was there more than a mere 'evasive action' or 'furtive gesture' in order to make the officer's search reasonable before this Court?

"Although the officer had no reason to be suspicious of the contents of the plastic bottle and the plastic bag from the fleeting glance he got of those objects before the jacket fell on top of them, the fact that he did notice those objects was sufficient to give him probable cause to believe that defendant Leach was attempting to hide the contents from him." *People v Hall, supra,* at 340.

Accordingly, the search was upheld.

By contrast, in *People v Nelson Pitts,* 40 Mich App 567; 199 NW2d 271 (1972), the officer observed the top of what appeared to be a prescription bottle in defendant's hand as he approached the car, tapped on the window, observed defendant drop the bottle between the seat and door, and again tapped on the window before defendant rolled it down. When asked what he dropped on the floor, defendant denied having dropped anything. The Court said:

"In *Evans* and *Hall,* the defendants' actions were such that it was *obvious* the defendants' actions were motivated by a desire to hide something.

"In the instant case, the circumstances did not justify the search. When the officers stopped the car in which defendant was riding they had no reason to believe that

he had contraband in his possession. The movement which Officer Miller saw was not as obviously evasive as those found in *Evans* and *Hall.* See, also, *People v Torralva, supra.* While Officer Miller did see defendant drop something, there could have been several explanations for it, *i.e.,* it could have been dropped accidentally as defendant was going to roll down the window. The officer had no idea whether anything was in the bottle and, if so, whether it was contraband. Defendant could have been hiding any number of things from the police. The officer thus had to infer that defendant's actions were evasive; that something was in the vial and that, if something was in the vial, it was contraband. At most, the officer had a mere suspicion. See, *e.g., United States v Day, supra.* Mere suspicion is not probable cause." *People v Pitts, supra,* at 578–579.

In the present case, Officer Chapman had even less reason to suspect that defendant possessed a controlled substance. He did not observe the paper bag, he did not directly observe any attempt to hide it, nor, even if he had, was there anything about the bag that would arouse an experienced narcotics law enforcement officer's "respectable suspicion" that the bag contained a controlled substance. Moreover, we have refrained from referring to defendant's movement as a "furtive gesture" because, contrary to the position taken by the people, we do not believe that the movement that Officer Chapman observed can be so characterized. He knew only that defendant had turned and leaned between the bucket seats. We can posit a number of reasons why he might have done so: Defendant might have been sneezing or coughing, reaching for his own identification, or searching in the console for the driver's vehicle registration and proof of insurance. In short, it was not obvious from Officer Chapman's limited observation that defendant's movement was motivated by a desire

to hide something, and we deem his movement wholly equivocal.

For the reasons stated above, we hold that the evidence obtained by Officer Chapman by means of such a search was inadmissible.[4] What we have said renders unnecessary discussion of the other points raised by defendant.

The conviction is reversed and the defendant discharged.

[4] We wish to emphasize that the right to conduct a limited protective search established in *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), is unaffected by our holding in this case.