PEOPLE v ROSALES

Docket No. 77-362. Submitted June 12, 1978, at Grand Rapids.—
Decided November 27, 1978. Leave to appeal applied for.

Defendant Roberto Rosales was convicted of carrying a pistol in a
motor vehicle in Saginaw Circuit Court, Eugene Snow Huff, J.
At trial a police officer testified that: (1) at roll call on the
morning in question· he had been told that a young black man
who has been arrested for armed robbery of "after hours"
establishments had escaped; (2) in the early morning hours of
the same day he noticed a van parked in front of a known
"after hours" establishment in an area noted for the high
incidence of crime; (3) defendant was seated in the driver's seat
and a young black man was seated in the passenger seat; (4)
upon being spotted approaching the van, defendant's eyes
widened, as if surprised, and he made a quick movement down
and forward, as if he were placing something between and to
the rear of the seats; (5) the officer ordered defendant from the
van and noticed a bulge in the carpet covering the floor of the
van in the area where defendant had reached; and (6) he
reached into the area and removed a fully loaded, cocked and
ready-to-fire semi-automatic pistol. The trial court denied sup-
pression of the pistol. Defendant appeals. *Held:*

1. The determination of whether or not the police acted
within the bounds of the Fourth Amendment in searching a
vehicle, as in all search and seizure questions, is based on the
specific facts presented.

2. Under the circumstances the search was justified as a
protective search or limited intrusion for his own safety and
the pistol was properly admitted.

Affirmed.

D. E. HOLBROOK, JR., P.J., concurred separately.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 68 Am Jur 2d, Searches and Seizures §§ 2 *et seq.,* 16, 96.
[3] 20 Am Jur 2d, Courts § 191.

OPINION OF THE COURT

1. CRIMINAL LAW—CONSTITUTIONAL LAW—SEARCHES AND SEIZURES—
   AUTOMOBILE.

   The determination of whether or not the police acted within the
   bounds of the Fourth Amendment in searching a vehicle, as in
   all search and seizure questions, is based on the specific facts
   presented.

2. CRIMINAL LAW—CONSTITUTIONAL LAW—SEARCHES AND SEIZURES—
   AUTOMOBILES—PROTECTIVE SEARCHES.

   A police officer who had been told at roll call that a young black
   man who had been arrested for armed robbery of "after hours"
   establishments had escaped had justification to order defendant
   out of his van and search the area into which defendant had
   just reached where, in the early morning hours, the officer
   observed the van parked in front of a known "after hours"
   establishment, the defendant was in the company of a young
   black man, the area was noted for a high incidence of crime,
   the officer, upon being noticed by defendant, observed defend-
   ant's eyes widen, as if surprised, and defendant made a quick
   movement down and forward as if placing something between
   and to the rear of the seats; such a search was justified as a
   protective search or limited intrusion for his own safety and a
   pistol found as a result was properly admitted at trial.

CONCURRENCE BY D. E. HOLBROOK, JR., P.J.

3. APPEAL AND ERROR—STARE DECISIS—PRECEDENT.

   A prior case should not be cited as precedent in a case where the
   facts are substantially different.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Robert L. Kaczma-
rek,* Prosecuting Attorney, and *Roland J. Jersevic,*
Assistant Prosecuting Attorney, for the people.

*Kathleen M. Cummins,* Assistant State Appel-
lant Defender, for defendant on appeal.

Before: D. E. HOLBROOK, JR., P.J., and T. M.
BURNS and W. VAN VALKENBURG,* JJ.

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

T. M. BURNS, J. Defendant was convicted after a jury trial for carrying a pistol in a motor vehicle, MCL 750.227; MSA 28.424, and sentenced to serve two to five years in prison. Defendant made several attempts both before and during the trial to have the pistol suppressed as the product of an illegal search and seizure under the Fourth Amendment. The only issue raised on appeal relates to the seizure of the pistol.

As in all search and seizure questions, the determination of whether the police acted within the boundaries of the Fourth Amendment must be based upon the specific facts presented. On the facts of this case, the police action was justified as a protective measure under the rationale of *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), and *Adams v Williams,* 407 US 143; 92 S Ct 1921; 32 L Ed 2d 612 (1972).

In the early morning hours of June 10, 1976, a Saginaw police officer, alone in his patrol car, noticed a van parked beyond the curb, blocking the entrance doors to a building. The officer knew that an illegal "after hours" establishment was being run in this building. At roll call that morning, the officer had been told that a young black man who had been arrested for the armed robbery of similar after hours establishments had escaped from the hospital. The officer also knew that this area was noted for the high incidence of crime.

Defendant was seated in the driver's seat of the van and a young black man was in the passenger seat. The officer knew the escaped suspect's name, but had only a general description which would fit many citizens of Saginaw, including the individual seated in defendant's van. Still, given the proximity to the "after hours" establishment, the officer decided to investigate the identity and purpose of

the two individuals.[1] Other officers were notified of this intention by radio.

The officer circled the block and pulled behind and to the side of the van. He was able to begin his approach to the van unnoticed by the occupants. When he did notice the officer, defendant's eyes widened, as if surprised, and he made a quick movement down and forward, as if he were placing something between and to the rear of the seats. The officer immediately ordered defendant out of the van.

Defendant alighted from the van when ordered to do so and went to stand with another officer who had just arrived. At this point, the first officer could see a bulge in the carpet covering the floor of the van[2] in the area into which defendant had just reached. The officer reached into the area and removed a .38-caliber Colt semi-automatic pistol fully loaded, cocked and ready to fire. Defendant's companion, who had remained in the van up to this point and was within reaching distance of the bulge in the carpet, was then removed and a search revealed that he had a loaded revolver in his waistband.

Under the circumstances just described, the officer's decision to order defendant out of the van, see *Pennsylvania v Mimms,* 434 US 106; 98 S Ct

---

[1] Defendant does admit that the fact of proximity to the after hours establishment *may* have given the officer reason to make an investigative stop. Given the circumstances detailed in the text, it seems clear that the officer's choice to approach the van was reasonable under the Fourth Amendment. The problem lies only with his response after he began to approach the van.

[2] The van was used in a business and contained only the two front bucket seats. The carpeting from the front area of the van met the carpeting from the back and overlapped slightly. The seam of the overlap ran from door to door rather than down the middle of the van. The bulge observed by the officer before he reached into the van was directly under this area of overlap.

330; 54 L Ed 2d 331 (1977), and investigate the area into which he had just reached can be justified as a protective search or limited intrusion for his own safety. As the majority noted in *Adams v Williams, supra,* "[t]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape". 407 US at 145.

The officer was faced with two individuals in a high crime area under circumstances which led him to conclude that an impending robbery at the after hours joint was more than a mere possibility. When defendant saw the officer and made the move noted above, the officer believed defendant was hiding a weapon. The intrusion was limited to removing defendant from the van and checking this area to either confirm or immediately dispel his belief that defendant was armed.

It must be admitted that the officer did not, before discovery of the pistol, have probable cause either to arrest defendant or undertake a full scale search of the van. But, neither of those events occurred until after the first pistol was discovered. That first pistol, the one upon which this prosecution is based, was discovered in a limited protective search. Just as the officer in *Adams,* who did not have probable cause to search the defendant, was justified by the surrounding circumstances in checking the spot he believed a gun was hidden, 407 US at 148, so the officer in this case was justified in his limited intrusive act. An officer's "suspicion" or conclusion based on his experience is entitled to some weight in our Fourth Amendment analysis. *People v Ridgeway,* 74 Mich App 306, 314; 253 NW2d 743 (1977), *lv den,* 401 Mich

831 (1977). The officer testified that he was sure defendant had a gun.

This case has certain similarities to *People v Robertson,* 81 Mich App 446; 265 NW2d 365 (1978), recently decided by this Court. In each case the seizure of a weapon from an area of a vehicle, not a person, can be justified under the self-protection for officers rationale of *Terry* and *Adams.* In each the area to be checked is drawn to the officer's attention by a "furtive gesture" of one of the occupants of the vehicle. In each, the "furtive gesture" does not stand alone but is coupled with other factors indicating criminal behavior and giving a basis for the officer's suspicion that a weapon had been hidden in a particular location in the vehicle.

It is the surrounding facts and circumstances, and the fact that the officer is looking for a gun, as opposed to drugs or other contraband, which distinguishes these cases from many of the other so called "furtive gesture" cases where a full search, dependent on probable cause, is involved. While this writer joined in suppressing evidence of a controlled substance seized in *People v Strong,* 77 Mich App 281; 258 NW2d 205 (1977), where the occupants made a movement in a van very similar to the movement here and would have suppressed marijuana evidence where the defendant did nothing more than drop a jacket over two clear vials in *People v Hall,* 40 Mich App 329, 340; 198 NW2d 762 (1972) (T. M. BURNS, P.J., dissenting), in neither of those cases did the surrounding circumstances give the officer reason to believe that his own safety may be in danger. There is a vast difference between what an officer may expect to be confronted with in a campground, *Strong, supra,* or on an expressway in Van Buren County,

*Hall, supra,* as compared to downtown Saginaw in the early morning. These differences in the surrounding circumstances justify a different police response. Actions and circumstances which may justify an officer's protective search for weapons would not justify the same intrusion where the officer had no reason to suspect a weapon's presence.

The trial court was correct in refusing to suppress the pistol in this case.

Affirmed.

W. VAN VALKENBURG, J., concurred.

D. E. HOLBROOK, JR., P.J. *(concurring).* I concur for the reason that the officer in the instant case believed defendant was hiding a weapon.

In *People v Robertson,* 81 Mich App 446; 265 NW2d 365 (1978), a case in which I dissented, the officer had no idea what the "dark colored object" was. Hence, in that case, I concluded that the search could not be characterized as a "protective" search. The facts in the case at bar being different, the search can be so characterized and justified.