## PEOPLE v ROSALES

Docket No. 62398. Decided July 25, 1979. On application by the
defendant for leave to appeal the Supreme Court, in lieu of
granting leave to appeal, reversed the judgments of the Court
of Appeals and the circuit court. Certiorari denied by the
Supreme Court of United States January 7, 1980.

Roberto Rosales was convicted by a jury in Saginaw Circuit
Court, Eugene Snow Huff, J., of carrying a pistol in a motor
vehicle. The defendant had moved to suppress the weapon as
the product of an illegal search of a van parked in a "no-
parking" zone, and the motion had been denied. The Court of
Appeals, T. M. Burns and Van Valkenburg, JJ. (D. E. Holbrook,
Jr., P.J., concurring specially), affirmed (Docket No. 77-362).
Defendant applies for leave to appeal. In a per curiam opinion
signed by Justices Kavanagh, Levin, Ryan, and Moody it was
*held:*

A protective search of a person by the police is permitted
during an investigatory stop to mitigate risks to police officers
performing their duties. Further detention or search must be
based on consent or probable cause. The people do not suggest
that there was consent or probable cause for the search in this
case. While the police must be free to investigate without fear
of violence, there is nothing in the record to suggest that the
police officer searched the van for that purpose.

The judgments of the Court of Appeals and the circuit court
are reversed, and the case is remanded to the Saginaw Circuit
Court for entry of an order to suppress the pistol as evidence.

Justice Williams, joined by Chief Justice Coleman and Jus-
tice Fitzgerald, dissenting, would hold that the limited search
in this case surmounts the Fourth Amendment challenge.

1. The Supreme Court of the United States has recognized
that a police officer may in appropriate circumstances and in
an appropriate manner approach a person to investigate possi-
bly criminal behavior even though there is no probable cause to
make an arrest. The police officer, based upon specific experi-
ence and observations, may conduct a limited search for weap-
ons if the police officer has reason to believe that criminal
activity is involved and that the persons with whom he is

dealing may be armed and dangerous. The focus of the Supreme Court of the United States in permitting such a limited search has consistently been the police officer's interest in assuring that his safety is not compromised where there is present in the searched area a suspect who may be armed with a weapon.

2. The police officer making such an investigatory stop may act upon specific reasonable inferences which he is entitled to draw from the facts in light of his experience. In this case the defendant has conceded that the fact of the van's proximity to an "after-hours" drinking establishment *may* have given the police officer reason to make an investigative stop. The police officer who confronted the defendant acted from personal observation coupled with knowledge obtained through his familiarity with the neighborhood of his patrol. Importantly, there was a passenger in the van who matched the description, known to the police officer, of an escapee who had been arrested for robbing such establishments. The police officer's actions in this instance, approaching the van, requesting the driver to get out of it, and limiting his search to the area into which the defendant had furtively reached as the police officer approached and where he could see a bulge in the carpet which he believed to be a gun, were reasonable under the circumstances and constitutionally unobjectionable.

87 Mich App 185; 274 NW2d 13 (1978) reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Linda Berns Wright,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Kathleen M. Cummins)* for defendant.

PER CURIAM. The question before us is how far the permissible stop-and-frisk of *Terry v Ohio* [1] extends in an automobile context. When the record does not show that the search was prompted by the officer's fear of violence while pursuing his

---

[1] 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

investigation, *Terry v Ohio* does not provide authority to validate the search without a warrant.

I

At roll call for his shift on June 10, 1976, Saginaw police officer Herzberg was told that a young black man, who had been arrested for the armed robbery of "after hours" drinking establishments in Saginaw, had escaped from the hospital where he apparently was receiving treatment. The individual was described only as being 5 feet 8 inches tall with a dark complexion.

Later that same morning (approximately 6:30 a.m.) Herzberg noticed a van parked in a prohibited zone by the entrance to a building. Herzberg testified that he knew that an "after hours" drinking establishment was being run in this building. Herzberg noted that the defendant was seated in the driver's seat of the van and a young black man[2] was in the passenger seat.

He circled the block and pulled behind and to the side of the van. He decided to investigate further and radioed other officers of his intention to do so. His approach to the van went unnoticed by the occupants. As the officer approached the van, the defendant bent slightly forward, leaning to the right, and "* * * you could see that something was going on in the middle section of where his body was".

Herzberg asked the defendant to identify himself and to step out of the van. The defendant did get out of the van and Herzberg told him to go back and stand by a backup unit which had by then arrived. Herzberg then looked inside the van and saw a "lump" where two pieces of carpeting

[2] The black man in the van was not in fact the one sought.

came together.[3] He lifted the carpeting and found a pistol.

The defendant was charged with carrying a pistol in an automobile.[4]

## II

The defendant filed a motion to suppress the weapon seized; he alleged its seizure was the product of an illegal search. At the hearing on the motion, Herzberg explained his action as follows:

"*Q.* Well, why were you going to check the van?

"*A.* Because of the circumstances of being parked in front of the after-hours joint, the movements that he had made and the male Negro subject in the van with him.

"*Q.* All right. What did you do then?

"*A.* After he had made his movements and stepped from the van, in my own mind, I was sure there was something there.

"*Q.* What did you think was there?

"*A.* A gun.

"*Q.* And why did you think that there was a gun there?

"*A.* As far as I could see, that's all it could have been.

"*Q.* What factors did you base your belief that you— or your feeling that there was a weapon inside of the van at that time? What were the factors?

"*A.* It would be the simple fact that they were parked illegally in front of the after-hours joint, blocking, a clear obstruction in and out, and the movements that he made and the information that we had regarding these places that were being robbed.

"*Q.* All right, and what did you do when you looked inside the van? What did you find?

---

[3] Contrast *Pennsylvania v Mimms,* 434 US 106; 98 S Ct 330; 54 L Ed 2d 331 (1977), where the police noticed the "bulge" on defendant's person once he emerged from a vehicle.

[4] MCL 750.227; MSA 28.424.

"*A.* I could see the carpeting was separated and there was a lump there, where the two pieces of carpeting had come together. One would be underneath and the other would overlap. The hump was pushed up.

"*Q.* Could you see the hump before you did anything with the carpet?

"*A.* Yes.

\* \* \*

"*Q.* What did you do after that?

"*A.* I lifted the piece of carpeting up and looked underneath it.

"*Q.* What did you find?

"*A.* A pistol.

\* \* \*

"*Q.* Was it unloaded?

"*A.* No.

"*Q.* Was it ready to fire?

"*A.* Yes.

"*Q.* What did you do after you found the weapon?

"*A.* The weapon, when I found it, had the hammer cocked. Simply by depressing the trigger it would have fired so I dropped the clip out and racked the chamber. There was a live round in the chamber."

In denying the motion, the trial judge said in part:

"\* \* \* it would appear that the evidence in this case clearly warrants the police action. He was acting on information which made him suspicious of the vehicle being parked at the place that it was, with the companion that the defendant had with him.

"This, combined with the defendant's own motions in apparently trying to hide something, caused the officer very properly to take the steps he did to search the vehicle and to disarm the defendant."

The Court of Appeals affirmed.[5]

---

[5] 87 Mich App 185; 274 NW2d 13 (1978).

### III

*Terry v Ohio* permits a protective search of the person during an investigatory stop in order to militate against unnecessary risks to police officers performing their duties. Further detention or search must be based on consent or probable cause.[6] The people do not suggest there was consent or probable cause in this case. While the police must be free to investigate without fear of violence,[7] there is nothing in this record to suggest that Herzberg searched the van for that purpose.[8]

In lieu of granting leave to appeal, pursuant to GCR 1963, 853.2(4), we reverse the judgments of the Court of Appeals and the circuit court and remand the case to the Saginaw Circuit Court for entry of an order consistent with this opinion.

KAVANAGH, LEVIN, RYAN, and BLAIR MOODY, JR., JJ., concurred.

WILLIAMS, J. *(dissenting)*. The question for decision is whether a police officer may conduct a limited search of a van for the officer's own safety, when he witnesses furtive movements by the driver which lead the officer to believe that a gun is being concealed therein, when the van is observed illegally parked in front of a known "after-

---

[6] See *United States v Brignoni-Ponce,* 422 US 873, 882; 95 S Ct 2574; 45 L Ed 2d 607 (1975), and *United States v Ortiz,* 422 US 891, 896; 95 S Ct 2585; 45 L Ed 2d 623 (1975). Contrast *People v Damaska,* 404 Mich 391; 273 NW2d 58 (1978), where we found probable cause for the police to proceed with a vehicle search after an investigatory stop.

[7] See *Adams v Williams,* 407 US 143, 146; 92 S Ct 1921; 32 L Ed 2d 612 (1972).

[8] We need not decide, consequently, whether the *Terry* protective search may extend from the person to the vehicle a person has exited. See, *e.g., Government of the Canal Zone v Bender,* 573 F2d 1329 (CA 5, 1978), limiting *Terry* under similar circumstances.

hours" drinking establishment, and contains a passenger who matches the description of an escapee who had been arrested for robbing such establishments, as well as the driver. If the officer may do so, then pursuant to the teachings of *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), and its progeny, the fruits of the search may be admissible in evidence. The trial court was correct in refusing to suppress the pistol, and defendant's conviction should be affirmed.

## I

The full facts are adequately stated in the majority opinion.

## II

In *Terry v Ohio, supra,* the United States Supreme Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest". *Id.,* 22. *Terry* held further that a police officer, based upon experience and observations, may conduct a limited search for weapons if he or she has reason to believe that "criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous * * *". *Id.,* 30. Without the necessity of probable cause to arrest or search, the officer may act upon "specific reasonable inferences which he is entitled to draw from the facts in light of his experience". *Id.,* 27. In the instant case, as characterized by the Court of Appeals, defendant conceded that "the fact of proximity to the after hours establishment *may* have given the officer reason to make an

investigative stop". *People v Rosales,* 87 Mich App 185, 188, fn 1; 274 NW2d 13 (1978).

The initial extrapolation from *Terry* occurred in *Adams v Williams,* 407 US 143; 92 S Ct 1921; 32 L Ed 2d 612 (1972), which upheld the seizure of a pistol from a person in a parked car. The police officer in that case was patrolling a high-crime area in the early morning hours. Acting pursuant to an informant's tip that the defendant-occupant of an automobile possessed narcotics and a weapon concealed in his waistband, the officer approached the vehicle and asked the defendant to step out. When the suspect lowered the window rather than heeding the officer's command, the officer reached into the automobile and removed a fully loaded gun from the defendant's waistband. The gun had not been visible from outside the vehicle. In upholding the admissibility of the seized weapon, the *Adams* Court ruled that, despite the absence of probable cause, a police officer should not simply "shrug his shoulders and allow a crime to occur or a criminal to escape". *Id.,* 145. Noting that the officer had reason to fear for his safety in light of both the area in which the defendant was discovered, as well as the time at which the incident took place, the *Adams* Court held that the officer's actions were "a limited intrusion designed to insure his safety" and that the weapon seized was properly admitted at trial. *Id.,* 147-148.

## III

*Adams* is persuasive authority for the proposition that the instant limited search surmounts a Fourth Amendment "unreasonable search and seizure" challenge. Const 1963, art 1, § 11. The police officer who confronted defendant-appellant acted from personal observation coupled with knowledge

obtained through his familiarity with the neighborhood of his patrol: he noted that the defendant's van was illegally parked in front of an after-hours drinking establishment, and he had received a description of an escapee, who had been arrested for robbing such establishments, which matched the physical features of the van's passenger. In addition, the officer observed the defendant quickly reach into a carpeted area immediately between the seats, before being challenged. Upon the defendant's exit from the van, the officer was able to see a bulge in this carpeted area. When the driver stepped out of the van, the suspected escapee remained inside, presumably with ready access to the object which the driver had placed under the carpeting. The officer testified at the weapon suppression hearing that he believed the object beneath the carpeting to be a gun. Wary as a result of these furtive motions, and sighting the tell-tale bulge, the officer's belief that the defendant was concealing a weapon was certainly reasonable.

## IV

In short, the focus of the Court has consistently been the police officer's interest in assuring that his or her safety is not compromised where there is present in the searched area a suspect who may be armed with a weapon. Consequently, the officer's actions in this instance—approaching the van, requesting the driver to exit, and limiting his search to the area into which defendant had furtively reached as the officer approached and where a bulge appeared—were reasonable under the circumstances and constitutionally unobjectionable.

The trial court was correct in refusing to sup-

press the pistol in this case, and defendant's conviction should be affirmed.

COLEMAN, C.J., and FITZGERALD, J., concurred with WILLIAMS, J.