### PEOPLE v PROSSER

Docket No. 44580. Submitted March 4, 1980, at Grand Rapids.—
Decided July 24, 1980. Leave to appeal denied, 410 Mich 862.

Lamar Prosser was convicted of possession of heroin and as an
habitual offender, Berrien Circuit Court, William S. White, J.
He appeals, alleging the refusal of the trial court to suppress
certain evidence uncovered during a pat-down search consti-
tutes error. *Held:*

The officer who conducted the search was not able to point to
particular facts from which he could have reasonably inferred
that the defendant was armed and dangerous at the time of the
detention, nor could the officer have properly detained the
defendant had he chosen to leave. The search was unreasona-
ble, and admission into evidence of the heroin taken from the
defendant during the search was improper.

Reversed.

ALLEN, P.J., dissented. He would hold that the pat-down
search of the defendant was justified since the evidence showed
that the officers' suspicion of ongoing criminal activity was
reasonable and that they were fearful for their own safety
while pursuing the investigation, and, therefore, the evidence
uncovered during the search should not be suppressed. He
would affirm.

### OPINION OF THE COURT

1. SEARCHES AND SEIZURES — REASONABLENESS — EVIDENCE — TRIAL
   — ERROR — CRIMINAL LAW.

   A pat-down search of an individual by a police officer is unreason-
   able where the officer is not able to point to particular facts
   from which he could reasonably infer that the individual was
   armed and dangerous, and, at the time of the detention, the

REFERENCES FOR POINTS IN HEADNOTES

[1] 68 Am Jur 2d, Searches and Seizures § 58.

Violation of federal constitutional rule (Mapp v Ohio) excluding
evidence obtained through unreasonable search or seizure, as
constituting reversible or harmless error. 30 ALR3d 128.

[2] 68 Am Jur 2d, Searches and Seizures § 58.

officer could not have properly detained the individual had he chosen to leave; admission of evidence uncovered during such a search during a subsequent criminal trial constitutes error.

DISSENT BY ALLEN, J.

2. SEARCHES AND SEIZURES — REASONABLENESS — CRITERIA — SUPPRESSION OF EVIDENCE — CRIMINAL LAW.

A *pat-down search of an individual by a police officer is justified where the officer has a reasonable suspicion, based on objective facts, of ongoing criminal activity and is fearful for his own safety while pursuing his investigation, and evidence so uncovered should not be suppressed.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John A. Smietanka,* Prosecuting Attorney, and *Angela Baryames,* Assistant Prosecuting Attorney, for the people.

*Frederick E. Salim (Philip J. Olson, II,* of counsel), for defendant.

Before: ALLEN, P.J., and M. F. CAVANAGH and C. W. SIMON, JR.,* JJ.

PER CURIAM. Following a bench trial on January 12, 1979, defendant was convicted of possession of heroin, contrary to MCL 335.341(4)(a) MSA 18.1070(41)(4)(a) [repealed by 1978 PA 368, effective September 30, 1978, now MCL 333.7403; MSA 14.15(7403)]. Defendant was, at that time, further convicted as an habitual offender, MCL 769.12; MSA 28.1084, and sentenced to prison for a term of four to eight years. Defendant appeals by right.

The only issue in this appeal is the refusal of the trial court to suppress the heroin taken from defendant's person. We find that this evidence should not have been admitted and, therefore, reverse.

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendant was one of three persons traveling eastbound on I-94 sometime around 1 a.m. in an automobile. Two state police officers noticed the car in which defendant was riding when it suddenly moved across lanes in front of another car, causing the other car to brake. The officers stopped the car and approached the driver, requesting driver's license and registration. It was uncontroverted that the driver produced the registration and denied having a driver's license, but one of the officers contended that the driver handed him an Illinois citation in lieu of a license. The officer compared the physical description on the citation to the driver's appearance and concluded that the citation's description properly applied to the front seat passenger. At this point, the officer testified, he suspected that at least one, and maybe two of the occupants of the car were lying as to their identities and, therefore, he requested all of them to exit from the vehicle.

Defendant, who had been sitting alone in the back seat, handed the other police officer his driver's license as he stepped out of the car. When the officer who had initially questioned the driver asked defendant who he was, defendant indicated that the other officer had his license. Apparently, the officer did not refer to this license but determined to make a pat down search of all three individuals for reasons of safety. Upon beginning to search the defendant, he felt a heavy, hard, bulky object in the inside left coat pocket. Reaching into the pocket, the officer felt something soft, like something plastic. He retrieved a plastic baggie from defendant's pocket and repeated the process five times, resulting in a net find of seven plastic bags containing heroin and marijuana, plus a bundle of cash. Both officers testified that they

witnessed no activity on the part of the three individuals that made them suspect that they were armed during the detention.

The trial court upheld the validity of this search on the basis of *Terry v. Ohio,* 392 US 1, 30; 88 S Ct 1868; 20 L Ed 2d 889 (1968), which states in part that:

"We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him."

The officer who conducted the search of defendant in this case knew that defendant had presented his driver's license to the other officer before the search was begun. From the testimony presented here, that officer was not "* * * able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous". *Sibron v New York,* 392 US 40, 64; 88 S Ct 1889; 20 L Ed 2d 917 (1968). We cannot conceive of a reason for which the officers could have properly detained defendant at the time of this detention had defendant chosen to leave. Therefore, we find that defendant's conviction must be reversed.

ALLEN, P.J. *(dissenting).* I dissent from the majority's conclusion that the search of defendant

was illegal under *Terry v Ohio,* 392 US 1; 88 S Ct
1868; 20 L Ed 2d 889 (1968).

In this case, unlike *Terry,* there is no question
about the propriety of the initial restrictions on
the defendant, since he was riding in a vehicle
which was being driven recklessly and, thus, be-
came a proper subject for an investigatory stop.
*Pennsylvania v Mimms,* 434 US 106, 109; 98 S Ct
330; 54 L Ed 2d 331 (1977). Upon receiving the
inconsistent information relating to the identifica-
tion of the driver and front seat passenger, one of
the state police troopers reasoned that further
investigation was necessary "of at least two of the
individuals in that car, possibly a third, for a
criminal matter of disguising or possibly that of
being a fugitive".

Admittedly, the police officers did not have prob-
able cause to arrest any of the occupants of the car
on either of these grounds. However, the police
officers in this case had reasonable suspicion,
based upon objective facts, that two, and possibly
the third occupant were involved in criminal activ-
ity justifying further investigation. *Terry, supra,
United States v Pelley,* 572 F2d 264 (CA 10, 1978),
*United States v Wilkerson,* 194 US App DC 393; 598
F2d 621, 624 (1978). As such, they acted reason-
ably in ordering all of the occupants out of the car.
*Mimms, supra, Pelley, supra, Wilkerson, supra,
United States v Williams,* 604 F2d 1102, 1124 (CA
8, 1979). Contrast *Ybarra v Illinois,* 444 US 85, 90-
96; 100 S Ct 338; 62 L Ed 2d 238 (1979). At this
point, the police officers were justified in conduct-
ing a limited protective search of the occupants for
concealed weapons only if they had reason to
believe that the occupants were armed and dan-
gerous. *Adams v Williams,* 407 US 143, 146; 92 S
Ct 1921; 32 L Ed 2d 612 (1972), *Terry, supra,* 27,

*Mimms, supra,* 111-112, *United States v Williams, supra,* 1124. Absent record evidence to show that such a limited search was prompted by the officers' fear of violence while pursuing their investigation, a warrantless pat-down search would be unauthorized. *People v Rosales,* 406 Mich 624, 629; 281 NW2d 126 (1979), *cert den* 444 US 1025; 100 S Ct 689; 62 L Ed 2d 659 (1980), *People v Summers,* 407 Mich 432, 448; 286 NW2d 226 (1979). Under the circumstances presented to the officers in the instant situation, *Pelley, supra,* 266, I cannot doubt that "* * * a reasonably prudent man in the circumstances would be warranted in the belief that his safety * * * was in danger". *Terry, supra,* 27. Since the frisking officer clearly testified that, under the circumstances and in light of his experience, he was fearful for his own safety while pursuing his investigation, I would conclude that the pat-down search of the car's occupants—leading to the discovery of the illicit drugs in defendant's possession—was justified under *Terry* and its progeny. Therefore, I would affirm the trial court's denial of defendant's motion to suppress.